In this case, Alabama's Uniform Child Custody Jurisdiction Act (hereinafter referred to as the Act) is under appellate review for the first time.
That Act is reported as Act No. 80-92 of the Acts of Alabama 1980, and, in a changed or altered state, it appears in the 1980 Cumulative Supplement to the Code of Alabama (1975) as §30-3-20 et seq. Consequently, all quotations of its sections shall be from the act itself; and, for brevity and convenience, we shall cite only a section number rather than the complete citation of the act, which is highly appropriate since the sections are identically numbered in Alabama's act and in the Uniform Act.
On August 23, 1978, the parties were divorced in North Dakota, and the custody of their minor son was granted to the appellant (mother), who, by that time, was residing in Alabama with the child. On April 15, 1980, the father filed his motion in North Dakota seeking custody of the boy. The mother was personally served by a deputy sheriff of Covington County, Alabama, on April 21, 1980, with a copy of the motion and a notice of the time, date and place of a hearing to be held by the North Dakota court upon such motion. She attended a deposition hearing in Opp, where a physician's evidence was taken. She did not appear at the North Dakota hearing.
The North Dakota court on July 8, 1980, entered a judgment granting the boy's custody to the father. The father filed a petition on August 4, 1980, in the Circuit Court of Covington County, relating the above facts and many of the findings contained in the North Dakota judgment. An exemplified copy of the judgment was attached to the petition. Additionally, the father alleged that the son had been abused and that "there is a great likelihood that the defendant (mother) will abscond with the child if in fact notified or advised that your plaintiff (father) has been granted custody of the minor child. . . ." He requested that temporary custody of the boy be granted ex parte to the Department of Pensions and Security until his permanent custody could be transferred to the father pursuant to the North Dakota judgment.[1] On August 4, 1980, the circuit court ex parte and summarily enforced the North Dakota custody modification judgment by rendering a final judgment which ordered the sheriff's department of Covington County to obtain custody of the child and to thereafter transfer and place his custody with the father pursuant to the North Dakota judgment. The sheriff duly and fully executed the court's order on the same date.
Four days later, the mother moved to set aside and vacate the August 4, 1980, judgment because she was denied due process of law since she was not served with any summons or notice prior to the rendition of the Covington County judgment. Other grounds were also alleged. After an evidentiary hearing, the trial court overruled the mother's motion, hence this appeal.
Our most extensive research has disclosed only one case interpretive of the uniform Act whereby an ex parte order was made as was here done. Ironically, the same procedure was followed in a North Dakota case. In Giddings v. Giddings,228 N.W.2d 915 (N.D. 1975), without notice nor hearing to the father, the North Dakota sheriff was directed by the district court to take the minor child of the parties into his custody and return her to her mother in conformity with an Iowa custody judgment. The Supreme Court of North Dakota held that it was error for the trial court to proceed ex parte in view of Section 4 of the Act which provides as follows:
 Before making a decree under this act, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be *Page 1072 
heard shall be given pursuant to section 5.
We cannot escape the conclusion that the circuit court's final judgment of August 4, 1980, violated procedural due process requirements. We must reverse this case and remand it for further proceedings consistent with due process and with the Act. To that end, in view of the absence of prior discussion of this new Act by the courts of this state, we consider it appropriate that we offer the following comments as a result of our considerable research in other jurisdictions which have applied the Act.[2]
Generally, we are required to recognize a modification of custody judgment from another state which had jurisdiction at the time its judgment was entered, and which subsequently had continuing jurisdiction at the time of the rendition of the modification judgment. Fry v. Ball, 190 Colo. 128, 544 P.2d 402
(Colo. 1975). A basic premise of the Act is that, while custody jurisdiction may overlap and exist in two states, it will not be exercised simultaneously in both states.
Sections 13, 14 and 15 of the Act are as follows:
Section 13.
 The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act or which was made under factual circumstances meeting the jurisdictional standards of the act, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act.
Section 14.
 (a) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree and (2) the court of this state had jurisdiction.
 (b) If a court of this state is authorized under subsection (a) and section 8 to modify a custody decree of another state it shall give due consideration to the transcript of the record and other documents of all previous proceedings submitted to it in accordance with section 22.
Section 15.
 (a) A certified copy of a custody decree of another state may be filed in the office of the clerk of any family or domestic relations court of any judicial circuit of this state. The clerk shall treat the decree in the same manner as a custody decree of the family or domestic relations court of any judicial circuit of this state. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a court of this state.
 (b) A person violating a custody decree of another state which makes it necessary to enforce the decree in this state may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody or his witnesses.
The courts of Alabama are thus required not only to recognize, but to enforce, valid custody modification judgments of another state. It has been held that Section 15 (a) provides a simplified and speedy method of enforcement, and that when a parent files an exemplified copy of a sister state's judgment with his pleading which seeks custody under such judgment, that constitutes an adequate filing to satisfy the provisions of that subsection in that regard. Roehl v. O'Keefe, 243 Ga. 696,256 S.E.2d 375 (1975). However, the Act is silent as to the nuts and bolts of the process which must be followed in the enforcement of another state's custody judgment except *Page 1073 
that "it shall be enforced in like manner as a custody decree rendered by a court of this state." A certified custody judgment of another state which has been filed with the Alabama court clerk has the same effect as an Alabama-rendered custody judgment. It can be enforced by habeas corpus, contempt injunction, a civil action, a petition or motion, or any other method available under the law of this state for the enforcement of a custody judgment rendered by a court of this state. State ex rel. Butler v. Morgan, 34 Or. App. 393,578 P.2d 814 (1978).
In this case, the mother does not challenge the circuit court's authority to grant a temporary ex parte child custody order under circumstances where a child's well-being necessitates such an order. When it is required in cases of this nature, temporary protective orders may be issued such as ordering the posting of an appropriate bond, or temporary custody may be granted to an appropriate agency or to a party if proper safeguards are established. However, the summary power to issue even a temporary ex parte order should be exercised with extreme caution and then only in cases where it is eminently clear from the pleadings which seek enforcement of the judgment that the immediate health, welfare or well-being of the child is in jeopardy without such a temporary judgment. Such facts should be alleged in detail in such pleadings and be substantiated in such manner as the trial court might reasonably require, such as affidavits.
Procedural due process should be scrupulously observed by perfecting proper service of the pleadings and of reasonable notice of the setting of the matter for trial.
A prompt hearing should be held as to whether the Act requires that the sister state's custody judgment be recognized and enforced. The party seeking to enforce the judgment of another state normally would meet their initial burden of proof at that limited hearing by the introduction into evidence of a properly authenticated copy of the judgment relied upon. At such hearing, the parent contesting the foreign judgment would have the right to specifically plead in defense thereto and to present evidence as to the nonexistence of jurisdiction of the sister state rendering the judgment. They could also plead and prove whether other just cause exists under the Act for not recognizing the judgment such as those stated in Section 8; or whether the sister state's judgment was punitive, Brooks v.Brooks, 20 Or. App. 43, 530 P.2d 547 (1975); or whether there was a lack of notice of the sister state's proceedings as is required by Section 4. Wenz v. Schwartze, 598 P.2d 1086 (Mont. 1979). The above examples are not intended to be exclusive, for there may be other valid grounds of contest at that first hearing.
Ordinarily, at such initial and limited hearing, the circumstances of the child or children is not then an issue before the court and evidence pertaining thereto is not admissible. State ex rel. Butler v. Morgan, supra. Should the trial court determine after such hearing that such a judgment must be recognized, the court would then enforce the other state's judgment without further proceedings.
If the local court decides that the Act does not authorize the recognition of the judgment, and if modification proceedings are then pending in the trial court, a further or additional hearing would be held to determine whether, in the trial court's judicial discretion, jurisdiction over such modification proceedings should then be exercised.[3] If jurisdiction is exercised, the modification proceeding would be heard on its merits, and evidence concerning the child's best welfare would be admissible and duly considered by the trial court prior to its final judgment thereon.
Cases construing the uniform act and the invaluable commissioner's notes pertaining thereto are collected in 9U.L.A. 116 (Master *Page 1074 
Ed. 1979). See also an annotation in 96 A.L.R.3rd 968.
For the foregoing due process reason, we reverse and remand this case.
This opinion was prepared by retired circuit judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama (1975), and it is hereby adopted as that of the court.
REVERSED AND REMANDED.
All the Judges concur.
[1] This type petition appears to be entirely proper and procedurally correct as an initiation of an enforcement proceeding under Section 13 of the Act.
[2] It would seem appropriate that the Bar through its Continuing Legal Education program and the Bench through the facilities of the Judicial College study and discuss the Act at an early date.
[3] More than six months have passed since the father gained actual custody in this instance. Some state other that Alabama may now be the child's home state as defined by Section 3.Williams v. Zacher, 35 Or. App. 129, 581 P.2d 91 (1978).