This appeal by Percy Pitts, the father, involves Uniform Child Custody Jurisdiction Act proceedings which were filed in the Circuit Court of Mobile County by the mother to enforce a Massachusetts court judgment, which granted to her the custody of the minor child of the parties, Chris.
Further references to the Uniform Child Custody Jurisdiction Act shall be either as UCCJA or the uniform act, and Alabama's version, which is essentially a carbon copy of the uniform act, shall be referred to as the act. 9 U.L.A. 116 (Master ed. 1979); 1980 Ala. Acts, No. 80-92.
The parties were divorced in 1971 by the Circuit Court of Mobile County (the Alabama court) and, in 1972, that court granted custody of the son to the father. Thereafter, numerous proceedings have been filed and hearings have been held concerning Chris and his relationship with his parents, most of such matters having been initiated by the mother whereby she primarily sought to enforce her visitation rights with her son. Because of the long and torturous legal history of their bitter litigation, the record and written exhibits exceed eight inches in height. Only highlights thereof in capsule form shall here appear, although the entire record has been read, reviewed *Page 107 
and studied, with the pertinent parts thereof being considered by this court.
In 1972 the mother moved to California and she still resides there. By agreement of the parties, Chris was flown from Alabama to California in December 1973 for a maternal visit, during which the mother instituted custody proceedings through the California court, which, on June 8, 1974, declined to exercise jurisdiction. She then promptly returned the child to the father in Alabama, where additional litigation was had. On November 26, 1974 the Alabama court entered a judgment concerning her visitation rights with the child and expressly restrained and enjoined the parties from filing any other motion for custody in any other court in Alabama, or in any other state, without the express permission of the Alabama court.[1]
In January 1976 the father, his present wife, and Chris moved to Michigan where the father was employed. The mother testified that she had no knowledge of her son's whereabouts until 1977, when she located him and filed a petition in a Michigan court for visitation with Chris. That trial court remanded the matter back to the Alabama court, but she filed no proceedings there. The mother appealed, and, pending an appellate decision, the father, child and stepmother moved to Massachusetts on October 11, 1977. For two months before moving to Massachusetts, the husband and child visited the paternal grandparents in Mobile. The Court of Appeals of Michigan dismissed the mother's appeal since neither the mother, father nor child then resided in Michigan.
A hearing was held in Mobile upon a petition which had been filed by the father while he still resided in Michigan, and, on October 26, 1977, the Alabama court rendered its judgment allowing the mother to show cause as to why she should not be held in direct contempt of the injunction contained in the November 26, 1974 order; and, pending her showing such cause, the court suspended all of her visitation rights. The father had flown from Massachusetts to Mobile to attend the hearing.
When they moved to Massachusetts, an apartment was rented for the family. The father was employed as an engineer. He obtained a Massachusetts driver's license, registered his car with the Commonwealth, and enrolled Chris in school there.
Just before Christmas in 1977, the father was personally served by a Massachusetts sheriff with copies of custody proceedings which the wife had filed in Massachusetts. He immediately employed legal counsel. Included in papers served upon him was an order to allow temporary visitation between the mother and son. On December 21, 1977 the Massachusetts court entered an order prohibiting the father from removing Chris from the Commonwealth. The parties, Chris and the respective attorneys appeared before the Massachusetts court and a temporary court order resulted whereby the mother was granted the right to have the boy visit with her for one week. On January 3, 1978 the father filed a motion to vacate the restraining order forbidding him to remove Chris from the Commonwealth and this motion was not granted. At the end of such visitation period, she promptly returned Chris to his father. The next day, January 5, 1978, the father placed Chris on a plane, and the boy was flown to Alabama. The father testified, "I sent my son off and then we packed up everything we had and left" on January 6, when they also returned to Mobile.
A few days after they arrived in Alabama, the father was personally served with a contempt summons for violating the Massachusetts court order not to remove Chris from Massachusetts and with a Massachusetts writ of habeas corpus to return to Massachusetts and produce Chris before the court there. He did not comply with either. In January 1978 he was informed by his Massachusetts attorney that Chris's temporary custody had been granted to the mother. *Page 108 
The father and son's location then apparently became unknown to the mother and to the Massachusetts court, and, according to her evidence, a final hearing was delayed on that account until in January 1980 when he resurfaced and, at his direction, his Massachusetts attorney filed various motions to set aside the December 1977 order forbidding him from removing Chris from the Commonwealth. During the entire pendency of the proceedings, including the evidentiary trial on the merits in May 1980, he continued to litigate the Massachusetts case through his counsel.
On June 30, 1980 the Massachusetts court rendered its final judgment which, among other matters, granted sole legal and physical custody of Chris to the mother. No appeal was taken from that judgment. Among other findings incorporated into the judgment were the following:
 "7. On October 11, 1977, Percy, his wife and Chris moved to Beverly, in this Commonwealth.
. . . .
 "9. The instant Complaint was filed in this Court on December 21, 1977, and Percy appeared generally, filing an answer.
 "10. On or about December 21, 1977, Percy resided in Beverly; he was employed within the Commonwealth; he held a valid Massachusetts automobile driver's license; he had an automobile duly registered in the Commonwealth.
 "11. At the time of commencement of this action, the child, Chris, resided in Beverly, in this Commonwealth, and was enrolled in the Beverly Public Schools.
 "12. On December 21, 1977, this Court entered an order forbidding Percy restraining him from removing the child from the Commonwealth (Pleading 4).
 "13. On January 3, 1978, Percy filed a Motion to Vacate the Temporary Order of December 21, 1977, restraining him from removing the child from the Commonwealth (Pleading 17). This Motion was not allowed.
 "14. On or about January 5, 1978, Percy, in violation of a duly entered order (see 12 above) forbidding him to remove Chris from the Commonwealth, did so remove himself and the child.
. . . .
 "16. A Complaint for Contempt was filed by Corinne against Percy (Pleading 23) alleging Percy had violated the order of the Court by removing the child from the Commonwealth and was duly served on Percy. He did not respond.
. . . .
 "22. At the commencement of this action, no other action for custody of Chris had been commenced in any other jurisdiction.
 "23. On April 8, 1980, this Court denied Percy's motion to dismiss this action on the ground of forum non conveniens and lack of jurisdiction (Sullivan, J.)
 "24. On May 13, 1980, this Court denied Percy's motion to dismiss the action on the ground of forum non [conviens] (Sullivan, J.), (Pleading 59).
. . . .
 "32. That Percy has not provided for the best welfare of the child. (Gelles transcript pp. 46/47, Plaintiff's Exhibit 7).
. . . .
 "36. That Corinne is the proper and fit parent to have the legal and physical custody of Michael Christian Pitts.
 "38. That Corinne is better able to provide for Chris' present and future needs.
 "39. Prior to the instant action, there has never been a full hearing upon the merits of the custody of the minor child of the parties."
On July 2, 1980 the mother filed in the Alabama court a complaint asking for the custody of the boy through the enforcement of the June 30 Massachusetts judgment.
The father's answer to her complaint consisted of the following: (1) the averments of the complaint were denied; (2) the hypothesis upon which the Massachusetts judgment was rendered was alleged to be incorrect insofar as it pertained to a lack of evidentiary hearings in the Alabama court; *Page 109 
(3) there have been no changes in the circumstances or conditions which would justify a change in custody; and (4) it would be to the best interest of the minor child that his custody remain with the father. By later amendment, the father added the following additional answers: (5) the Alabama court should decline to enforce the Massachusetts judgment because a proceeding was pending in the Alabama court concerning the custody of the child at the time she filed her petition in Massachusetts and (6) jurisdiction should be declined because the mother had contemptuously disobeyed the orders of the Alabama court. The father also included in his amended answer a counterclaim seeking a modification of the Massachusetts judgment in the event that judgment was ascertained to be valid and enforceable.
On August 20, 1980, during the trial of the case, the court verbally struck the counterclaim.[2]
At the conclusion of the evidence and at the father's request, the trial court privately interviewed Chris in the judge's chambers outside the presence of the court reporter, and the record is silent as to the contents of that discussion between the judge and the boy.[3]
The circuit court rendered its judgment on August 22, 1980 which granted the mother's petition for enforcement of the Massachusetts custody judgment, but the Alabama court stayed the execution of the judgment pending an appeal. The mother was granted the right to have Chris visit with her for eight hours on alternate Saturdays, pending a final decision by an appellate court. The trial court awarded judgment for the sum of $1,500 against the father and in favor of the mother's attorneys of record as attorney's fees.
 THE FATHER'S APPEAL
The father appeals and states that the two primary issues for review are (I) whether the trial court erred in enforcing the Massachusetts custody judgment and (II) whether the trial court erred in striking the father's counterclaim.
 I
The act created new rules, a totally new concept in Alabama, governing interstate child custody matters, and those type cases can no longer proceed to a valid conclusion by ignoring the act and abiding by contra old precedents. At the outset, we note that section 27 of the act expressly repealed all laws, or parts of laws, in conflict with that legislation.
In section 1 the act's laudable purposes are stated, among which are the following:
"(a) The general purposes of this act are to:
 "(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
. . . .
 "(5) deter abductions and other unilateral removals of children undertaken to obtain custody awards;
 "(6) avoid re-litigation of custody decisions of other states in this state insofar as feasible;
 "(7) facilitate the enforcement of custody decrees of other states;
. . . .
 "(b) This act shall be construed to promote the general purposes stated in this section."
The only occasions for courts to exercise jurisdiction in interstate child custody controversies are set forth in the act. The two primary jurisdiction provisions are contained in section 3 as follows: *Page 110 
 "(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
 "(1) this state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state, or
 "(2) it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;"
In the definitions in section 2, "home state" is defined to mean "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months."
Section 3 (a)(2) does not require that a child's only significant connection be with a particular state in order for jurisdiction of a court of that state to attach. The requirement is that the child have a significant connection with that state. Hofer v. Agner, 373 So.2d 48 (Fla.Dist.Ct.App. 1979).
The act encourages continuing jurisdiction by a court which entered an original custody judgment unless that court presently is without jurisdiction under Section 3 or has declined to assume jurisdiction. State ex rel. Butler v.Morgan, 34 Or. App. 393, 578 P.2d 814 (1978); Brown v. DistrictCourt, 192 Colo. 93, 557 P.2d 384 (1976).
With regard to continuing jurisdiction, the following commissioner's notes to Section 14 are pertinent:
 "Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. See People ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. . . .
 "For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6 1/2 months (3 1/2 months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the "home state" of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law."
[Citations omitted. Emphasis added.]
In December 1977, as between Alabama, Michigan and Massachusetts, the latter was the only state to have jurisdiction under the uniform act. The child and both parents had not been residents of Alabama for more than two years; therefore Alabama not only lost home state status but modification jurisdiction had also shifted elsewhere. Michigan achieved home state *Page 111 
status, but it had declined to exercise jurisdiction. When the father and child moved to Massachusetts, that commonwealth then became the only state to properly exercise jurisdiction. Its jurisdiction was based upon the significant connection portion of section 3 and upon the existence of the necessary facts which authorized jurisdiction to modify the Alabama judgment under section 14.
Nevertheless, the father contends that Massachusetts was prohibited from exercising jurisdiction because the October 26, 1977 judgment of the Alabama court allowed the mother to show cause as to why she should not be punished for a contempt of court, and she had not shown such cause. Section 6 provides that a court shall not exercise its jurisdiction under the UCCJA "if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state." That proviso, however, is not here applicable, for the judgment permitting her to show cause was not then a proceeding in which custody determination was one of the issues. Sections 2 (2) and 2 (3).
The father complains that, from the findings of the Massachusetts court, that court wrongfully ascertained that there had never been a full evidentiary hearing as to Chris's custody. That is not an essential finding as to jurisdiction; and, even if we assume such finding to be totally wrong, such erroneous conclusion could not affect the validity of the jurisdiction of the Massachusetts court on collateral attack. His attorney could have furnished any or all of the previous Alabama proceedings to the Massachusetts court.
It is his further contention that the mother did not come into court with clean hands which fact precluded the trial court from granting the relief sought. The unclean hands rule appears in section 8, and the only possible pertinent portion of that section is in 8 (b) that, if the petitioner has violated any other provisions of a custody decree of another state, the court may decline to exercise its jurisdiction if it is just and proper under the circumstances. That portion of the UCCJA is discretionary with the trial court of the forum state and the Alabama court did not abuse its discretion in that regard, even if 8 (b) were construed to here apply to the mother. However, its applicability as to the father's conduct in the prohibited removal of the child from Massachusetts is definite and certain.
Additionally, the father complains that the Massachusetts judgment was rendered more than two years after the father and child left Massachusetts. Their leaving was contrary to the neexeat order of the Massachusetts court and he did not comply thereafter with that court's habeas corpus proceedings. After the father's whereabouts became known once more, the Massachusetts court overruled many of his motions and a final evidentiary hearing was held. The father participated fully in all proceedings through his attorney. He cannot be rewarded now for his actions contrary to the orders of the court. There was evidence before the trial court that such actions caused the delay in the proceedings. Jurisdiction existed at the time the mother filed her custody petition, which is the critical date, not some subsequent time. Rexford v. Rexford, 631 P.2d 475
(Alaska, 1980).
While we have responded to most, if not all, of the father's contentions, matters such as those numbered (2), (3) and (4) in the father's answer are issues that could not be re-litigated in the Alabama enforcement proceedings. The Massachusetts judgment is conclusive as to all issues of law and fact decided and as to the custody determination made until it is lawfully modified. Section 12.
The Massachusetts judgment was valid. The factual circumstances as determined by the Massachusetts court meet the jurisdictional standards of the act. The courts of Alabama are required by the act not only to recognize, but also to enforce, valid custody modification judgments of another state in like manner as if it was a custody judgment which had been rendered by a court in Alabama. Wyatt v. Falhsing, 396 So.2d 1069
(Ala.Civ.App. 1981); Sections 13 and 15 of the act. *Page 112 
 II
Proceedings to enforce a sister state's judgment do not open up the inquiry to petitions for modification. To grant recognition to a sister state's judgment in one paragraph and then to modify that foreign judgment in the next paragraph on the ground, or pretext, of changed conditions is contrary to the purpose of the uniform act. Formerly, that practice was not uncommon. It constituted one of the troublesome roots of the problem and was one reason that the uniform act was needed and necessary. "The only valid objection in the enforcing state is a claim that the decree is not entitled to recognition." Bodenheimer, The Uniform Child Custody Jurisdiction Act: ALegislative Remedy for Children Caught in the Conflict of Laws, 22 Vand.L.R. 1207, 1236 (1969).
In Wyatt v. Falhsing, supra, the following was stated by this court:
 "A prompt hearing should be held as to whether the Act requires that the sister state's custody judgment be recognized and enforced. The party seeking to enforce the judgment of another state normally would meet their initial burden of proof at that limited hearing by the introduction into evidence of a properly authenticated copy of the judgment relied upon. At such hearing, the parent contesting the foreign judgment would have the right to specifically plead in defense thereto and to present evidence as to the nonexistence of jurisdiction of the sister state rendering the judgment. They could also plead and prove whether other just cause exists under the Act for not recognizing the judgment such as those stated in Section 8; or whether the sister state's judgment was punitive. Brooks v. Brooks, 20 Or. App. 43, 530 P.2d 547 (1975); or whether there was a lack of notice of the sister state's proceedings as is required by Section 4. Wenz v. Schwartze, 598 P.2d 1086 (Mont. 1979). The above examples are not intended to be exclusive, for there may be other valid grounds of contest at that first hearing.
 "Ordinarily, at such initial and limited hearing, the circumstances of the child or children is not then an issue before the court and evidence pertaining thereto is not admissible. [Citation omitted.] Should the trial court determine after such hearing that such a judgment must be recognized, the court would then enforce the other state's judgment without further proceedings.
 "If the local court decides that the Act does not authorize the recognition of the judgment, and if modification proceedings are then pending in the trial court, a further or additional hearing would be held to determine whether, in the trial court's judicial discretion, jurisdiction over such modification proceedings should then be exercised. If jurisdiction is exercised, the modification proceeding would be heard on its merits, and evidence concerning the child's best welfare would be admissible and duly considered by the trial court prior to its final judgment thereon." [Footnote omitted.]
That decision is dispositive of the issue regarding the dismissal of the father's counterclaim. Since the Alabama court determined that the commonwealth's judgment should be recognized, it was due to enforce it without further proceedings.
The learned trial court was correct in its decision to enforce the Massachusetts judgment. We therefore affirm the circuit court's judgment insofar as the appeal of the father is concerned.
 THE MOTHER'S CROSS-APPEAL
The mother's cross-appeal raises two issues: (A) that the circuit court, after ordering the enforcement of the Massachusetts judgment, erroneously stayed its enforcement order, and (B) the awarded attorneys' fee was inadequately low.
 A
The circuit court, without a written motion by the father, stayed the enforcement of its judgment of August 22, 1980. We do not approve the procedure utilized in effecting the stay. *Page 113 
In stay proceedings in enforcement matters in UCCJA cases, the procedure to be therein followed is identical to, and does not vary from, the general law of Alabama governing stays on appeals in custody cases. The party desiring a stay should file a written motion seeking such relief. However, any stay pending appeal of a custody order, or of an enforcement judgment, should be very sparingly granted only after allowing all parties an opportunity to be heard and only after cautiously exercising judicial discretion. An appeal by an unsuccessful party from an adverse child custody judgment does not supersede that judgment. The act does not provide for a stay on appeal, and Alabama's general law regarding stays must not be so abused as to contravene the spirit of the UCCJA in this type case. A stay should be granted on appeal as to a successful UCCJA enforcement proceeding only if it would have been granted had the case been one concerning solely intra-state custody. The fact that the winning party in the trial court is a non-resident is a totally insufficient ground upon which to grant a stay of enforcement of a sister state's custody judgment, for all such parties in all such cases would probably be non-residents. Adequate protection can be provided by other methods in the vast majority of cases. For example, the trial court could require such a non-resident to post a proper bond to secure the prompt return of the child in the event the trial court's enforcement judgment is reversed upon appeal.
In Field v. Field, 382 So.2d 1132 (Ala.Civ.App. 1980), it was decided that, where a trial court denies a stay of judgment request pending an appeal in a child custody case, the party seeking the stay is then required to file a motion for a stay of judgment in this court if they desire to pursue the matter. Since no such motion was filed in this court in the Field case, we did not consider the denial of the stay when we decided the appeal. The contrary would also be true; that is, if the trial court grants a stay on appeal in such a case, the party aggrieved by the stay order must file a motion in this court to dissolve the trial court's stay order. No such motion was filed in this court in the instant case. Therefore, we will not consider her complaint in that regard on this appeal; but, since the judgment of the trial court is affirmed which enforces the Massachusetts custody judgment, the order of the trial court granting a stay of judgment is hereby dissolved, the father is hereby directed to immediately transfer the custody and possession of Chris to the mother, or to her authorized representative, and the trial court shall hereafter make such orders as may be necessary to effect such immediate transfer of Chris's custody to the mother consonant with the Massachusetts judgment.
 B
As to attorney's fees, one of the mother's attorneys testified that, since the Massachusetts final judgment, he expended two hundred ten hours upon this litigation and that his charges to the mother were at the out-of-state rate of $100.00 per hour, plus expenses, with a minimum daily fee of $1,000.00.
The elements material for consideration in establishing attorney's fees are enumerated in Ingalls v. Hare, 266 Ala. 221, 96 So.2d 266 (1957), which also stated that the allowance of attorney's fees rests within the discretion of the trial court, who may call to his aid his own judgment of the value and fix the fee accordingly, the statements of expert witnesses being advisory only. In a case of this nature, the trial court's discretion applies not only as to what amount constitutes a reasonable fee, but also as to whether the party to be taxed with the other party's fee should be taxed with all or with just a portion of that fee.
Under these circumstances, we will not substitute our opinion for that of the trial judge. We do not say that the attorneys are not due to be paid the total of their fees as contended, but we cannot hold that, under the circumstances, the trial court abused its discretion in requiring the father to pay only $1,500 upon the mother's *Page 114 
attorney's fees. There was not such an abuse of discretion that we must reverse in that regard.
The judgment of the trial court is affirmed insofar as the mother's cross-appeal is concerned.
 MOTIONS
The mother's motion as filed in this court on November 10, 1980 to correct the contents of the record by striking therefrom certain proceedings, father's exhibit D, and her further motion as filed herein on May 29, 1981 to add to or supplement the record, are both denied. A.R.A.P. rule 10 (f).
The record in this case is voluminous. The briefs and oral argument of each party were superior and clearly represented much research, thought, study and expertise.
The mother has requested that this court award attorneys' fees to her attorneys as to this appeal, which request is hereby granted. The father shall pay to the mother's attorneys of record on this appeal the sum of $1,500 to be applied upon their fee for here representing the mother. The father's request for an attorney's fee upon appeal is denied.
The foregoing opinion was prepared by retired circuit judge Edward N. Scruggs while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e), Code 1975, and this opinion is hereby adopted as that of the court.
STAY OF EXECUTION DISSOLVED.
AFFIRMED.
All the Judges concur.
[1] Since the validity of that provision in that judgment is not before us, by our silence we do not condone its use nor do we imply its constitutionality or legality, or the contrary.
[2] Since no party raises an issue as to the legal effect of such a verbal order, we opt not to rule upon whether such procedure complies with A.R.C.P. rule 58.
[3] We pretermit deciding this case upon the basis that the trial court thus had evidence before it which is not available in the record. Mayhan v. Mayhan, 395 So.2d 1022 (Ala.Civ.App. 1981).