This is an interstate child custody case, the issues of which being largely governed by the provisions of the Parental *Page 124 
Kidnapping Prevention Act of 1980 (the federal act) as is now codified in 28 U.S.C. § 1738A.
Mrs. Juanita Mitchell, the defendant mother, sought a writ of habeas corpus in an Alabama circuit court in an attempt to obtain custody of the child of the parties by the enforcement of a prior judgment of a Texas court which had granted the daughter's custody to her. After an ore tenus hearing before the Alabama court on July 7, 1981, that court rendered its September 3, 1981 judgment, which made the following findings:
 "The Plaintiff (father) is presently a resident of the Bessemer Division of Jefferson County, the Defendant (mother) is presently a resident of Harris County, Texas.
 "The parties were married July 1977 in Houston, Texas. Shortly thereafter the parties moved to Birmingham where they resided for approximately 1 1/2 years. In the latter part of 1978 or the early part of 1979, the parties moved to Florence, AL where they lived for an additional 1 1/2 years until July 1980. At that time the parties moved to Houston, Texas where the Plaintiff went into business with the Defendant's father. In the middle of August 1980, the parties moved to a home in Houston where they resided through the month of November 1980. A child was born to the parties on November 3, 1980, and the parties separated around the middle of November 1980 with the Plaintiff returning to his parent's home in Alabama November 17, 1980.
 "The Plaintiff returned to Texas with the evidence being in conflict as to whether or not that return was in December 1980 or January 1981, the Court however reconciling the conflict in the testimony to that of the Plaintiff's testimony and that was the Plaintiff returned to Houston, Texas January 6 or 7, 1981, and remained in Houston until January 18, 1981. The Plaintiff went to the Defendant's home in Houston on January 18, 1981, and although it is conflict what occurred at the time of the Plaintiffs arrival it is not controverted that the Plaintiff left the Defendant's residence with the minor child without the Defendant's permission and returned to the State of Alabama.
 "Subsequently the Defendant filed for divorce in the State of Texas January 29, 1981, amended the petition for divorce March 31, 1981, service was obtained on the Plaintiff in the State of Alabama on April 21, 1981, and default was taken June 6, 1981. The Texas Court divorced the parties and granted custody of the minor child to the Defendant. Meanwhile the Plaintiff on March 13, 1981, filed a petition for custody in this Court alleging that the whereabouts of the Defendant was unknown and obtained a pendente lite order of custody on the 13th day of March, 1981, awarding care, custody, and control of the minor child to the Plaintiff.
 "This is a case to be decided under the Uniform Child Custody Jurisdiction Act which passed the legislature in the regular session 1980 and the previous case decisions which are not in conflict with this act.
 "The Court hereby makes the following findings of fact:
 "1. That the Plaintiff and the child were residing within the State of Alabama at the time the order granting temporary custody to the Plaintiff entered on March 13, 1981, which also was the initial decree affecting custody of the minor child.
 "2. That the Plaintiff and Defendant resided within the State of Texas in marital cohabitation, that the parties separated while living in Texas and that the Defendant was a resident of the State for six months and the county for 90 days prior to the filing of the petition for divorce as required by Texas law.
 "3: That jurisdiction properly rests before the Texas Court in Harris County, Texas to dissolve the marriage.
 "4. Although this Court has determined that Texas was the proper forum and had jurisdiction to render the *Page 125 
Decree of divorce, it is the further finding of this Court that concurrent jurisdiction exists to determine the question of custody in that an immediate emergency to protect the child exists where the proof supports that the Defendant and her parents requested the sum of $10,000.00 in order to give custody of the minor child to the Plaintiff.
 "5. That the child is in a good home and is being properly cared for and loved and that the best interest of the child would be served by awarding care, custody, and control of the child to the Plaintiff.
 "IT IS, THEREFORE, ORDERED, CONSIDERED, ADJUDGED, AND DECREED AS FOLLOWS:
 "1. That care, custody, and control of the minor child, Natalie Norell Mitchell, is hereby awarded to the Plaintiff Ricky J. Mitchell with visitation granted to the Defendant."
The federal act became effective on July 1, 1981, which was before the habeas corpus hearing and the final judgment in the trial court of Alabama. Hence, it applies to this case and, in any conflicting areas, takes preference over the Uniform Child Custody Jurisdiction Act as that uniform act appears in §30-3-20, et seq., of the Code of Alabama (1975). Because of the issues here involved, we must examine and apply the federal act almost exclusively in order to properly decide the two primary questions, i.e., first, whether the Texas judgment was entitled to full faith and credit and was, therefore, required to be enforced and, second, whether the Alabama court had jurisdiction to grant custody of the child to the father. A number of issues were here argued by counsel but these two problem areas substantially and adequately cover all material matters raised.
Alabama's courts are required by the federal act to extend full faith and credit to a sister state's child custody determination, which was rendered consistently with the federal act, by enforcing the judgment according to its terms and without modification. § 1738A (a). If the Texas custody judgment comported with the federal law, the judgment must be enforced. On the other hand, if it did not conform therewith, it is not entitled to full faith and credit and it is not mandatory under that act that it be enforced. Accordingly, when confronted with an enforcement problem concerning a foreign custody judgment, the first inquiry, if raised (as was here done), should be whether the sister state had jurisdiction under any of the provisions contained in the federal act. The critical date in ascertaining such compliance, or noncompliance, is the date of the filing of the proceeding in the Texas court, January 29, 1981, not the date of the rendition of the Texas judgment. § 1738A (c)(2)(A). Pitts v.Sutter, 408 So.2d 105 (Ala.Civ.App. 1981), cert. denied,408 So.2d 114 (Ala. 1982).
The federal act details when a state's child custody determination is consistent with the act. One of the conditions which is stated and defined therein and which confers jurisdiction upon a court to render an enforceable interstate custody judgment is home state status, which means, in the case of a child who is less than six months old, the state in which the baby lived from birth with his parents, a parent, or a person acting as a parent. § 1738A (b)(4) and § 1738A (c)(2)(A). Those two subsections must be read and construed together. When so done, the Texas court had jurisdiction under the provisions of the federal act because, when the proceedings were instituted in Texas, that state had been the child's home state within the preceding six months and the child was absent from Texas only because of her removal by her father. The mother continued to reside in Texas.
The federal act does not, and, constitutionally, probably could not, provide the procedure to be followed in enforcement proceedings in state courts. The applicable procedure in UCCJA cases was generally discussed, by dicta, in Wyatt v. Falhsing,396 So.2d 1069 (Ala.Civ.App. 1981). No valid reason exists as to why the following procedure, as outlined in the Wyatt *Page 126 
case, should not apply to full faith and credit interstate custody enforcement matters:
 It (a sister state's judgment) can be enforced by habeas corpus, contempt, injunction, a civil action, a petition or motion, or any other method available under the law of this state for the enforcement of a custody judgment rendered by a court of this state. State ex rel., Butler v. Morgan, 34 Or. App. 393, 578 P.2d 814 (1978). . . .
 A prompt hearing should be held as to whether the Act requires that the sister state's custody judgment be recognized and enforced. The party seeking to enforce the judgment of another state normally would meet their initial burden of proof at that limited hearing by the introduction into evidence of a properly authenticated copy of the judgment relied upon. At such hearing, the parent contesting the foreign judgment would have the right to specifically plead in defense thereto and to present evidence as to the nonexistence of jurisdiction of the sister state rendering the judgment . . .
 Ordinarily, at such initial and limited hearing, the circumstances of the child or children is not then an issue before the court and evidence pertaining thereto is not admissible. State ex rel. Butler v. Morgan, supra. Should the trial court determine after such hearing that such a judgment must be recognized, the court would then enforce the other state's judgment without further proceedings.
Wyatt v. Falhsing, supra, at 1073.
Almost exclusive child custody jurisdiction is initially granted to the home state by the federal act, while the uniform act grants alternative jurisdiction. For example, the federal law dictates that jurisdiction under the significant connection section has no application if another state is the child's home state; but the uniform act contains no such proviso. Here, Texas was the home state and the Alabama court could not proceed because of a significant connection. The federal act is more rigid, allows less judicial discretion, and has attempted to provide more certainty as to the jurisdiction of courts. It eliminates many instances of concurrent jurisdiction which can, and did, occur under the uniform act, but which more readily occurred under court decisions which governed this area prior to the adoption of the uniform act.
The federal act further provides that in those instances where custody cases as to the same child are pending in different states at the same time, the court in the last case filed shall not exercise any jurisdiction if the other state's proceedings (which were first filed) are being exercised consistently with that act. § 1738A (g).
There is no controversy over the fact that the Texas court had domestic jurisdiction under Texas law. As previously noted, Texas had jurisdiction under the federal law. Also, the Texas case was first filed and its proceedings were exercised pursuant to the federal act. The Texas judgment was entitled to full faith and credit and should have been enforced according to its terms pursuant to the dictates of Congress through the federal act. The Alabama ex parte temporary custody judgment was without federal jurisdictional foundation and could not be utilized to prevent the enforcement of the Texas judgment.
Section 1738A (f) of the federal act provides as follows as to modification of the Texas judgment by the Alabama court:
 (f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
 (1) it has jurisdiction to make such a child custody determination; and
 (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
Here, the Texas court continued to have jurisdiction. "Continuing jurisdiction exists when the initial custody order was rendered in compliance with the PKPA and the child or any contestant continues to reside in the state." Flannery v.Stephenson, 416 So.2d 1034 (Ala.Civ.App. 1982); § 1738A (d). The *Page 127 
mother has continued to reside in Texas and the proper court of that state has not declined to exercise modification jurisdiction. Therefore, the Alabama court had no authority under the federal act to modify the Texas judgment.
That act of Congress does not recognize an emergency as granting modification authority, but it expressly states that a sister state's judgment can only be modified as is provided in § 1738A (f), supra. § 1738A (a). This is not to say that either the best interest rule or the emergency rules as to custody were abolished by the federal act. Congress, however, established the proper forum for the determination of such issues in modification proceedings. In this case the federal act dictates that a judicial decision as to those issues remains with the Texas court rather than being assumed by the Alabama court. In any event, the facts as found by the trial court do not justify a conclusion that a legal emergency existed.
Since both critical decisional issues were expressly covered by the federal act, it is not necessary to also apply the provisions of the uniform act to the present facts.
For the foregoing reasons, the judgment of the learned trial court is reversed and this cause is remanded to that court for the prompt rendition of a judgment enforcing the Texas judgment according to its terms and without modification.
The foregoing opinion was prepared by retired circuit judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama of 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.
WRIGHT, P.J., recuses himself.