177 N.J. Super. 167 (1981)
425 A.2d 1081
MARIE PATRICIA STEVENS, PLAINTIFF-APPELLANT,
v.
GARY L. STEVENS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1981.
Decided January 19, 1981.
*168 Before Judges MATTHEWS, MORTON I. GREENBERG and ASHBEY.
Lawrence M. Friedman argued the cause for appellant.
James F. Collins argued the cause for respondent.
PER CURIAM.
Plaintiff and defendant were married in Arizona on March 11, 1978. A child, Scott Stevens, was born to them on June 22, 1978. Defendant has resided in Arizona at all times since the marriage. Plaintiff, however, left defendant and Scott in Arizona on August 1, 1979. She came to New Jersey and established residence here with four children from a prior marriage. Scott continued to reside with defendant after plaintiff left him. On *169 September 27, 1979 plaintiff having returned to Arizona removed Scott from that state by taking him from a baby sitter.
Apparently in response to plaintiff's action defendant on the same day, September 27, 1979, filed an action for divorce in Arizona in the Superior Court, Maricopa County. He sought custody of Scott in his complaint. On September 27, 1979 the Arizona court issued an injunction which restrained both parties from removing Scott from that state during the action.
On October 25, 1979 plaintiff brought this New Jersey action in the Superior Court, Chancery Division. On November 15, 1979 plaintiff was served with the Arizona pleadings including the injunction. On November 26, 1979 defendant was served in Arizona with a summons and complaint in the New Jersey action.
Both parties have actively litigated the actions in each state. Plaintiff filed an answering pleading in Arizona which asserted that Arizona did not have jurisdiction to determine custody of Scott. That defense was stricken on February 20, 1980. On April 16, 1980 the Arizona court granted defendant temporary custody of Scott. On August 29, 1980 the Arizona court reaffirmed its jurisdiction and directed plaintiff to deliver Scott to defendant. We were advised at oral argument that the Arizona action is still pending as a contested case and that no final judgment has been entered there.
Defendant moved in New Jersey to dismiss the action here. Plaintiff moved for temporary custody of Scott. The court heard oral argument on plaintiff's motion on May 15, 1980. Additionally the court also considered defendant's jurisdictional objections at that time. The motion judge after an analysis of the Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-28 et seq., L. 1979, c. 124, effective July 3, 1979 (hereinafter called the "Act"), determined that the Superior Court of New Jersey should not exercise jurisdiction in this action. He made this determination without a plenary hearing solely on the basis of the record. He indicated that the criteria for jurisdiction under *170 the Act pointed to Arizona and that the purpose of the Act was to avoid duplicate custody litigation and removal of a child to another state to establish jurisdiction. Accordingly an order dismissing this action was entered May 27, 1980. Plaintiff appeals from that order.
The Chancery Division "... has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
(2) It is in the best interest of the child that a court of this State assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
b. Except under paragraphs (3) and (4) of subsection a., physical presence in this State of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.
c. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody. [N.J.S.A. 2A:34-31]
Of the four possible grounds for jurisdiction only N.J.S.A. 2A:34-31a(2) could be applicable here. New Jersey was not Scott's home state when the action was started because he had not been in New Jersey for six consecutive months or from the time of his birth at that time. N.J.S.A. 2A:34-30e. Thus N.J.S.A. 2A:34-31a(1) could not be the basis for New Jersey jurisdiction. N.J.S.A. 2A:34-31a(3) and (4) are plainly not applicable because there is no showing that Scott has been abandoned, that the New Jersey court must act because of emergency *171 conditions, that no other state has jurisdiction or that another state with jurisdiction will not exercise it. But N.J.S.A. 2A:34-31a(2) could apply since Scott and plaintiff were in New Jersey when the action was started and there could have been available in New Jersey evidence concerning Scott's care, protection, training and personal relationships. The motion judge did not explicitly determine that the criteria in N.J.S.A. 2A:34-31a(2) had not been met.
But even assuming that the trial could have had jurisdiction it was not obliged to entertain this action. In a custody action a New Jersey court may decline jurisdiction if a custody action is also pending in another state, N.J.S.A. 2A:34-34, this State is not a convenient forum, N.J.S.A. 2A:34-35, or if the plaintiff "... for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct...." Thus we must determine since there was no explicit finding that there could not have been jurisdiction under N.J.S.A. 2A:34-31a(2) whether in any event jurisdiction should have been declined.
Our review of the record clearly convinces us that plaintiff wrongfully took Scott from Arizona and engaged in reprehensible conduct. Defendant in his affidavit recited that while he was at work the child was with Linda Fala, a babysitter, at her residence and that plaintiff "... forcibly entered the premises therein, while competent and reliable babysitting was taking place, physically assaulted said Linda Fala, and forcibly took the minor child of the parties from the residence of the babysitter." Plaintiff did not give her version of the exact circumstances surrounding the removal of the child in any affidavit filed in the Chancery Division. But there was no suggestion at argument that the basic allegation that the child was removed from a babysitter's care without notice to defendant was not true. It will be noted, of course, that the Act does not define what conduct is "reprehensible" or in what circumstances a child is "wrongfully taken" from another state. Certainly *172 removal of a child in violation of an injunction would be such conduct. Yet N.J.S.A. 2A:34-36 is not by its terms limited to such situations though clearly the statute could have easily been adopted in such form. We are aided in determining what is wrongful conduct by the Act itself and by prior case law. Both denounce conduct of the character of plaintiff's actions here. N.J.S.A. 2A:34-29e provides that a purpose of the Act is to "deter abductions and other unilateral removals of children undertaken to obtain custody awards." Since the only conceivable basis for jurisdiction in the Chancery Division was established by plaintiff removing Scott by taking him from the baby sitter if the trial court had entertained this action it would have frustrated a very purpose of the Act.
Even before the Act was passed the Supreme Court indicated that a trial court in a custody action could decline to exercise its jurisdiction rather than to adjudicate custody "... when a New Jersey court is asked to determine custody of a child present in the state as a result of a child snatching or disobedience of a sister state's orders, barring extraordinary circumstances." Borys v. Borys, 76 N.J. 103, 125 (1978). Obviously "child snatching" in the view of the Supreme Court could include removal of a child even though the removal violated no order. This is clear from the language of the court giving the basis to decline jurisdiction disjunctively. In the circumstances we hold that the undisputed facts established that plaintiff engaged in reprehensible conduct and wrongfully removed Scott from Arizona. Thus the trial court properly dismissed this action.
In reaching this result we emphasize the limited impact of the judgment of dismissal. This is not a case such as Nehra v. Uhlar, 168 N.J. Super. 187 (App.Div.), certif. den. 81 N.J. 413 (1979) where a party seeks to enforce a foreign judgment in New Jersey. In such a case if the New Jersey court declines to make a plenary custody determination the prior judgment will be enforced. Such enforcement could be very much against a child's welfare because of a change in circumstances from the time of the original order. 168 N.J. Super. at 194. Here there is *173 no final judgment in Arizona. The parties are active litigants in that state. Thus a dismissal will simply mean that the parties will litigate custody in Arizona rather than New Jersey. This hardly seems unfair since that was the situs of the marriage and was Scott's place of birth and residence before he was wrongfully brought to New Jersey. We also observe that we see no reason to assume that the Arizona courts will be any less protective of Scott's interest than the Superior Court of New Jersey. See Borys v. Borys, supra, 76 N.J. at 126. Obviously from the viewpoint of Scott the forum of the litigation is a neutral factor.
Affirmed.