433 So.2d 664 (1983)
Sheikha Dena AL-FASSI, Appellant,
v.
Sheikh Mohammed AL-FASSI, Appellee.
No. 83-230.
District Court of Appeal of Florida, Third District.
June 28, 1983.
Melvyn B. Frumkes and Cynthia L. Greene, Miami, for appellant.
*665 No appearance for appellee.
Before SCHWARTZ, C.J., and BASKIN and FERGUSON, JJ.
FERGUSON, Judge.
By this appeal, appellant/wife questions whether a Bahamian judgment which effectively reverses an order of a California court and awards custody of the minor children to the appellee/husband should be recognized and enforced in Florida, as ordered by the Circuit Court for Dade County.
In reaching the pure legal issues we need not recite the titillating but otherwise attention-diverting cross-accusations of the parties pertaining to fitness of each as parents, none of which was considered of import by the Bahamian court. The material facts are as follows.
On February 24, 1982, the Superior Court of the State of California, located in the county where the parties had allegedly lived in a palatial estate, entered a temporary order, on the wife's petition, which, inter alia, awarded custody of the children to the wife, reaffirmed prior orders restraining the parties' removal of the children from the jurisdiction, and continued to March 16, 1982 a hearing on the husband's motion regarding "in personam jurisdiction and forum non conveniens."
On February 25, 1982, one day after entry of the California decree, the husband sailed to the Commonwealth of the Bahamas with the children and the royal entourage. Arriving in the Bahamas, amidst heraldry, he took up residence in the Paradise Island Hotel and Villas, occupying the entire ninth floor of the hotel. Approximately one week later, on March 1, 1982, the Supreme Court of the Commonwealth entertained the wife's petition for enforcement of the California decree.
On March 24, 1982 the Bahamian court entered a twenty-nine page order which found that the wife had misled the California court into believing that California was the home of the parties. It also found the husband's defiance of the California decree excusable because "the circumstances in which the orders were made seem unusual."[1] The court then awarded custody of the children to the husband, concluding:
[T]he consideration of all the relevant facts put before me has revealed that the natural surroundings of these minors is [sic] at the Royal Palace at Jeddah, or in an enclave when outside of Saudi Arabia.
The above-cited portion of the judgment sets forth the court's most significant consideration on the "best interests of the children" question. In another portion of the opinion it is otherwise stated:
[A]ssuming the personal fitness of the two parties to be equal, there is far greater risk of the minors losing the cultural heritage of Saudi Arabia if their custody is granted to the [wife] than if the [husband] retains control of them... . The fact remains that with the best will in the world, it would, I think, not be possible for her to prevent *666 the minors [from] becoming `little Americans', ....
Another factor considered by the court to favor the husband's retention of control of the minor children was the emotional instability of the wife attributed to her state of unhappiness, which instability was evidenced primarily in the sworn statement of the husband's witness, upon which statement the court did not "place weight."
Within hours after the Bahamian decree was entered, the husband left with the children for Florida[2] and has never returned to the Bahamas. In July 1982, the California court, where the earlier temporary order was entered, declined to continue its jurisdiction to consider the wife's petition for visitation rights, for the express reason that the "courts in Florida are the more convenient courts to resolve any custody disputes." See § 61.1308(1)(d), Fla. Stat. (1981). In August, 1982, the wife filed, in the Circuit Court for Dade County, Florida, an amended petition to set aside or modify the foreign custody decree.[3] It is agreed that the children had been living in Florida for almost a year and that Florida is the home state.
We make several observations, at the outset, regarding the controlling laws. The Uniform Child Custody Jurisdiction Act ("UCCJA") does not mandate recognition of custody decrees of foreign nations. See § 61.1348, Fla. Stat. (1981). However, the courts are not free to disregard custody decrees of other nations simply because they are non-UCCJA decrees. Section 61.1348, Florida Statutes (1981) provides that before the provisions of the UCCJA relating to the recognition and enforcement of custody decrees of other states can be applied to decrees of foreign nations, reasonable notice and opportunity to be heard must have been given by the foreign tribunal to all affected persons. Section 61.1348 also extends the general policies of the Act to the international area.
But we find the Bahamian proceeding and final judgment are exceedingly difficult to square with the general policies of the UCCJA in matters of jurisdiction and substance.
First, the inquiry conducted by the Bahamian court does not meet the requirements of Section 61.1348, i.e., that "reasonable notice and opportunity to be heard" be given. Neither the husband nor the children ever appeared in court. Although the wife appeared in court, she was not examined. By stipulation the case was submitted to the court on affidavits and transcripts of the California proceedings. It cannot be contended that a full-blown hearing on custody, with the only pleading before the court being the wife's petition for enforcement of the California temporary order, with no live witnesses present and testifying, conducted five days after the parties entered the jurisdiction, constituted "reasonable notice and opportunity to be heard."
Even if we were to find that the requirements of Section 61.1348 were met, Section 61.1328  which, by reference in Section 61.1348, applies to foreign nation decrees[4]  weighs against recognition of the Bahamian order. The Bahamian court's exercise of jurisdiction, even if valid under its own laws, did not satisfy, substantially, UCCJA prerequisites, and the Bahamian decree was not entered under factual circumstances meeting the jurisdictional standards of the Act. § 61.1328, Fla. Stat. (1981). The jurisdictional standards that must be adhered to by a court of this state and, according to the above analysis, must also be met by a court of a foreign nation, are defined in *667 Section 61.1308, Florida Statutes. See Fernandez v. Rodriguez, 97 Misc.2d 353, 411 N.Y.S.2d 134 (Sup.Ct. 1978); see also Hernandez v. Hernandez, 406 So.2d 513 (Fla. 3d DCA 1981) (custody decree of foreign state (Texas) need not be recognized by Florida court where Texas was without jurisdiction under its own laws to enter a custody decree, and Texas law permitting exercise of jurisdiction over minors is inconsistent with residency requirements of UCCJA).
Section 61.1308(2) provides that physical presence in the state of the children, or of the children and one of the contestants, is not alone sufficient to confer jurisdiction except (1) in cases of abandonment, mistreatment, abuse, or neglect, Section 61.1308(1)(c), or (2) where (a) "[i]t appears that no other state would have jurisdiction under prerequisites substantially in accordance with [Section 61.1308(1)(a)-(c)]," or (b) it is shown that another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody, and it is in the best interest of the child that a court of this state assume jurisdiction. § 61.1308(1)(d). The Bahamian court's jurisdiction rests solely on the physical presence of the children in the Bahamas  that presence being temporary, and obviously for the purpose of obtaining a favorable ruling on custody. There is no showing that the exceptions to Section 61.1308(2) apply here. The Bahamian court's jurisdictional basis, which itself expresses uncertainty, is stated early in the judgment:
The parties are not citizens of this country, nor are they domiciled or ordinarily resident here. The jurisdiction of this Court to entertain the summons springs solely from the fact that the minors are here, having been brought here by the defendant from the State of Florida, ... . On those bare facts, I think it is manifest that the conduct by this Court of a complete examination of the merits of this case would pose a severe problem if only because, (the parties themselves excluded) all of the witnesses, save one, are foreigners, resident abroad.
Despite the reservations as to its jurisdiction, the court commenced its examination, making two significant observations en route:
I shall, therefore, proceed with this judgment on the assumption that the orders of the California Court are not a nullity. On that assumption, the removal of the minors from the continental United States in defiance of the orders of the California Court makes this the type of case commonly referred to as a "kidnapping case".
The "kidnapper-husband" eventually succeeded in the Bahamian proceeding, which raises another question of the factual circumstances under which the Bahamian decree was entered. Under Florida law, a court cannot exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody, unless required in the interest of the child. § 61.1318(2), Fla. Stat. (1981).[5]
Not only does the Bahamian decree contravene the jurisdictional standards of *668 the UCCJA, but it also defeats the purposes and policies of the Act, as stated in Section 61.1304, among which are: (1) to avoid jurisdictional competition and conflict, (2) to assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence is most readily available, (3) to discourage continuous controversies over child custody in the interest of greater stability, (4) to deter abductions and other unilateral removals of children undertaken to obtain custody awards, and (5) to avoid relitigation of custody decisions of other states.
Apart from the question of the recognition of the foreign decree under the UCCJA, the principles of comity do not require recognition since the decree is offensive to a public policy of our state, i.e., that a custody decision be based upon the best interests and welfare of the minor children. Fantony v. Fantony, 21 N.J. 525, 122 A.2d 593 (1956). Section 61.13(3), Florida Statutes (1981) states that the court shall consider and evaluate all factors affecting the best interests of the child, and enumerates some of the significant factors. There are conspicuously missing, among the factors considered by the Bahamian court, the following considerations of Section 61.13(3): (1) length of time the children lived in a stable environment and the desirability of maintaining continuity; (2) education of the children; (3) psychological stability of the parents based on competent evidence; and (4) physical health of the parents. Although the decree purports to have considered the best interests of the children, little evidence based on those interests, as set out by statute, was presented to the court. The factor focused on by the Bahamian court was the "risk" of losing the inheritance of royalty if the children were raised as "little Americans." Comity must give way to the interests of the state in exercising parens patriae jurisdiction over the child with the objective of protecting the recognized best interests of the child. Rzeszotarski v. Rzeszotarski, 296 A.2d 431 (Ct.App.D.C. 1972); Fantony v. Fantony, supra. We agree with appellee that to recognize the Bahamian decree would invite similar defiance of lawful custody orders entered in this state by flight to the Bahamas solely for the purpose of obtaining a more favorable child custody ruling. See Kittel v. Kittel, 194 So.2d 640 (Fla. 3d DCA 1967) (although Mexican court had jurisdiction under its law, Florida court would not recognize Mexican divorce decree because doing so would permit a spouse to secure a divorce in a foreign jurisdiction, within a few days, on grounds not recognized in Florida, thus encouraging spouse-shedding).
Although we have thoroughly examined the issue presented, i.e., a challenge to the Florida court's order recognizing the Bahamian judgment (which order adopts the recommendations of a special master), we decline to make a resolution of that thorny question the ratio decidendi for reversing the trial court. There is an alternative and more fundamental basis for disposition of the case.
Assuming, without deciding, that the Bahamian decree is entitled to recognition, the Florida court has jurisdiction to modify that decree, under Section 61.133, Florida Statutes (1981), because it is clear that at the time the wife filed her petition in Florida to modify the foreign decree, (1) the Bahamian court had no jurisdiction over the parties and subject matter under prerequisites substantially in accordance with the provisions of the UCCJA, and (2) the Florida court did have jurisdiction pursuant to Section 61.1308(1)(a) or (b).
Reversed and remanded.
SCHWARTZ, Chief Judge (dissenting).
The majority has prepared an excellent opinion which might well be appropriate if written for the Bahamas Court of Appeal, where the appellant could have, should have, but did not seek review of the Bahamas trial court decision of which she complains. Since, however unfortunately, we do not sit as judges of that court, I think that  even if we disagree with the result  we should afford comity to what is an obviously *669 conscientiously considered decision of a respected fellow jurisdiction. Beverly Beach Properties, Inc. v. Nelson, 68 So.2d 604 (Fla. 1953), cert. denied, 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 643 (1954); Herron v. Passailaigue, 92 Fla. 818, 110 So. 539 (1926); 33 Fla.Jur.2d, Judgments and Decrees § 288 (1982). Of course, the Florida trial court would then be free, in its reviewable (by us) discretion, to modify the judgment in any manner jurisdictionally and substantively authorized by the law of this state.
NOTES
[1] The "unusual circumstance" referred to was the entry of the orders prior to a determination on the husband's motion challenging the court's jurisdiction and the California forum. The Bahamian court labored, unfortunately, under a misunderstanding that the California court had summarily granted custody of the minor children to the wife permanently. In truth, the California court had only awarded custody of the children to the wife with full visitation rights to the husband, and had enjoined both contestants from removing the children outside the court's jurisdiction, thereby preserving the status quo until a full hearing could be conducted twenty days later on the husband's motion. Of course, it is elemental in American jurisprudence, and we suspect in English jurisprudence as well, that a court has jurisdiction to determine its own jurisdiction, Sun Insurance Co. v. Boyd, 105 So.2d 574 (Fla. 1958); Department of Business Regulation v. Provende, Inc., 399 So.2d 1038 (Fla. 3d DCA 1981), and may enter orders preserving the status quo, North Dade Water Co. v. Adken Land Co., 114 So.2d 347 (Fla. 3d DCA 1959), and preventing a mooting of the underlying controversy. See City of Jacksonville v. Giller, 102 Fla. 92, 135 So. 549 (Fla. 1931); Taylor v. Taylor, 100 Fla. 1009, 130 So. 713 (Fla. 1930). Therefore, the circumstances, referred to by the Bahamian court, were not at all unusual.
[2] Prior to the twenty-three-day visit in the Bahamas, the children had lived in Hollywood, Florida, first with their mother alone, then with both parents, and thereafter with their father alone since the mother left Florida in January, 1982 to file the California action.
[3] The wife sought a modification that she and her husband share the parental responsibility and that the children reside primarily with the wife.
[4] Section 61.1348 refers indirectly to Section 61.1328 as follows: "The provisions of this act relating to the recognition and enforcement of custody decrees of other states... ."
[5] Contrary to the views expressed by the Bahamian court, this also appears to be public policy of England as expressed by its appellate court in Re H. (infants), [1966], 1 All E.R. 886. There the father and children were citizens of the United States, and a New York court had entered an order that the children should reside in the United States and be under control of the State of New York. The English trial court would not modify the order of the New York court and grant custody to the "kidnapping" mother, but instead ordered that the children be returned to New York, in the absence of a showing that they would come to some harm if the father took them back to New York. In affirming, the appellate court ruled that the best interests of the children required that they be sent back to New York, "the sooner the better." The court also approved, heartily, the following remark made by the trial judge:

The sudden and unauthorised [sic] removal of children from one country to another is far too frequent nowadays, and as it seems to me, it is the duty of all courts in all countries to do all they can to ensure that the wrongdoer does not gain an advantage by his wrongdoing. 1 All E.R. at 888-89.