638 A.2d 1184

**Anwar MALIK**

v.

**Joohi MALIK.**

**No. 598, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

March 30, 1994.

522

Linda Haspel, argued (Lynn E. Pickens and Haspel & Meiselman, Chartered, on the brief), Rockville, for appellant.

Ralph K. Rothwell, Jr., argued (Gary R. Maslan and Maslan, Maslan and Rothwell, P.A., on the brief), Baltimore, for appellee.

Argued before CATHELL, MOTZ and MURPHY, JJ.

MURPHY, Judge.

The parties to this appeal are battling for custody of their daughter (the child), who was born in Karachi, Pakistan on

September 11, 1983. Appellant, the child's father, is a citizen of Pakistan. Appellee, the child's mother, also a citizen of Pakistan, has obtained a student visa that permits her to remain in this country on a temporary basis. The parties were married on June 20, 1982 and lived together until September of 1990, at which time the child was attending St. Joseph's Convent School in Karachi.

On September 15, 1990, appellee left the marital home and moved in with her parents. She took the child with her. Appellant sued for custody. When appellee learned of appellant's lawsuit, she fled the country, taking the child with her. Soon thereafter, appellee moved into the home of a man with whom she has continued to live and by whom she conceived a son who was born in 1991. Appellee was represented by counsel in the Pakistani custody proceeding. She refused, however, to appear in person. She also refused to obey the judge's order that the child be produced. It appears that the judge did consider a written statement submitted by appellee, but awarded custody to appellant.

Having obtained legal custody of his daughter, appellant set out to find her. Appellee hid the child from appellant for over two years. In 1992, appellant's private detectives were finally able to locate the child and appellee in Baltimore County. Once she realized that she had been discovered and that appellant was about to seek enforcement of the order granting him custody of his daughter, appellee filed a complaint in the Circuit Court for Baltimore County, requesting custody of the child and a restraining order against appellant. At the conclusion of an emergency hearing, the trial judge decided that the Circuit Court for Baltimore County had jurisdiction to determine custody, that the Pakistani custody order was not entitled to comity, that temporary custody should be granted to appellee, and that appellant should be enjoined from going within three hundred feet of the child, appellee, or their residence.

Appellant asks us to reverse, and to require that comity be granted to the Pakistani custody order. He presents but one question for our review:

Did the chancellor err in exercising jurisdiction when custody proceedings were pending in a foreign country?

We are persuaded that the Circuit Court for Baltimore County does have home state jurisdiction over this dispute. On this record, however, we cannot affirm the circuit court's refusal to grant comity to the Pakistani custody order. We remand for further proceedings. The circuit court may make whatever pendente lite modification(s) to the present order that are appropriate, consistent with this opinion, and in the best interest of the child. Until the further proceedings have concluded, however, the present order shall remain in effect.

## *I*

The Uniform Child Custody Jurisdiction Act (U.C.C.J.A.) is codified in Md.Code (1974, 1991 Repl.Vol.), § 9–201 et seq. of the Family Law Article (hereinafter referred to as "FL").

In *Etter v. Etter*, 43 Md.App. 395, 398, 405 A.2d 760 (1979), this court recognized:

"A court is allowed to decline jurisdiction of a child custody proceeding to deter abduction of children for the purpose of obtaining a custody award."

The parties to this case were married in Pakistan. They are both citizens of that country. The minor child was born and raised there until she was wrongfully removed. When appellant originally filed for custody, Pakistan was the only home the child had ever known. Under these circumstances, the assumption of jurisdiction by a Maryland Court would appear to offend the controlling principles behind the U.C.C.J.A. Absent the most extraordinary circumstances, a party should not be permitted to obtain relief from a Maryland court by acting with unclean hands in violation of another court's order. Whether those extraordinary circumstances exist must be determined in accordance with Part III of this opinion.

There are four bases for jurisdiction under the U.C.C.J.A.: (1) home state, (2) significant connections, (3) abandoned

children or emergency situation and (4) other state jurisdiction. FL § 9–204. FL § 9–213 provides:

> The Courts of this state shall recognize and enforce an initial decree or modification decree of a court of another state that had assumed jurisdiction *under statutory provisions substantially in accordance with this subtitle, or that was made under factual circumstances meeting the jurisdictional standards of this subtitle,* so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this subtitle.

(Emphasis added).

The U.C.C.J.A. has been adopted with minor variations in all fifty states and the District of Columbia. One of the act's main objectives is "to avoid jurisdictional conflict ... in matters of child custody." FL § 9–202(a)(1). In recognition of the fact that our courts will be forced to resolve custody disputes that have arisen in foreign countries, FL § 9–203 provides:

> The general policies of this subtitle extend to the international area. The provisions of this subtitle relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees of legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.

When presented with a jurisdictional conflict in a child custody case, the court must proceed as follows:

> FIRST, it must ascertain whether it has jurisdiction.

> SECOND, it must determine whether there is a custody proceeding pending or a decree in another state which presently has jurisdiction. If so, *the court must usually decline its jurisdiction.*

*Etter, supra,* 43 Md.App. at 398, 405 A.2d 760 (emphasis added).

### Emergency Jurisdiction

When a ... court is presented with substantial evidence of imminent physical or emotional danger to the child upon the child's return to the custodial parent, it is ... empowered to issue a *temporary protective order* which will preserve the status quo for such limited time as is required to permit the petitioner to apply for a change of permanent custody to the state which has jurisdiction over such a petition under the U.C.C.J.A.

*Nussbaumer v. Nussbaumer*, 442 So.2d 1094, 1097 (Fla.App. 5 Dist.1983) (emphasis added).

■ The Circuit Court for Baltimore County had emergency jurisdiction to consider appellee's complaint. The trial judge's ruling, however, cannot be affirmed on the basis of emergency jurisdiction. A court has emergency jurisdiction under the U.C.C.J.A. when

the child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.

FL § 9–204(a)(3).

Appellee's Petition for Emergency Temporary Custody and Ex Parte Restraining Order Pending Hearing alleged "that the Respondent was constantly physically abusive to the minor child of the parties in order to coerce her to follow his commands." In light of those allegations, the circuit court had jurisdiction to hear the motion.

■ "A trial court has jurisdiction to determine the question of its own jurisdiction." *Highfield Water Co. v. Washington County Sanitary Dist.*, 295 Md. 410, 415–416, 456 A.2d 371 (1983). While the court is in the process of making that determination, it has the authority to issue whatever orders are necessary to protect the parties and to provide for a correct resolution of the jurisdictional issue. Thus the circuit court had emergency jurisdiction between the filing of the

complaint and the hearing. Because the evidence presented at the hearing did not persuade the trial judge that the child was in imminent danger, the circuit court did not thereafter have emergency jurisdiction over this dispute.

### "Significant Connections" Jurisdiction

■ We reject appellee's argument that this custody case belongs in the Circuit Court for Baltimore County because the child now has "significant connections" to Maryland. FL § 9–204(a)(2) does provide that a court has jurisdiction over a child custody dispute if (1) the child and at least one contestant have a "significant connection" with the state, and (2) there is available in that state substantial evidence concerning present or future care of the child." This Court has noted, however, that "the purpose of the act's section on significant connections is to limit jurisdiction, not proliferate it." *Olson v. Olson*, 64 Md.App. 154, 165, 494 A.2d 737 (1985).

When there is a home state, the federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (Supp.1993) (P.K.P.A.), forbids the use of significant connections as the basis for jurisdiction in child custody litigation. If there is a conflict between state and federal law, the Supremacy Clause mandates that federal law prevails. U.S. CONST., ART. VI § 2. *See, e.g., Ex Parte Blanton v. Blanton*, 463 So.2d 162, 164 (Ala.1985); *Patricia R. v. Andrew W.*, 121 Misc.2d 103, 467 N.Y.S.2d 322, 323 (Fam.Ct.1983). The P.K.P.A. prevails in this case. *See Mitchell v. Mitchell*, 437 So.2d 122, 126–27 (Ala.Civ.App.1982). In this case there are two home states. Maryland does not have "significant connections" jurisdiction.

### "Home State" Jurisdiction

■ In this case, the trial judge decided that the Circuit Court for Baltimore County had jurisdiction because "Maryland is the child's 'home state'" according to FL § 9–201(f). We agree. "Home state" as defined in FL § 9–201(f) "means the state in which the child, immediately preceding the time involved, lived with the child's parents (or) a parent ... for at least six consecutive months." As the child has lived in

Maryland for the past two years, Maryland qualifies as her "home state" under the U.C.C.J.A.

In *Mainster v. Mainster*, 466 So.2d 1228 (Fla.App. 2 Dist. 1985), a child who had been living with her mother in Florida was removed to Virginia by her father and remained in Virginia for almost a year before her mother took her back to Florida. On the day the child was taken from Virginia, her father filed an emergency petition for temporary custody in a Virginia state court. He was awarded custody and attempted to enforce the award in Florida. A Florida trial court dismissed his petition because the child had been kidnapped to Virginia. The appellate court reversed, explaining that the Virginia court did have home state jurisdiction to grant custody because "regardless of the circumstances under which [the child] had been taken to live in Virginia, she had lived there for the requisite six months preceding the father's filing his action." 466 So.2d at 1229.

We hold that Maryland has home state jurisdiction under the statute because the child has lived here for longer than the requisite six months. That jurisdiction should be exercised, however, only if such action is required by the principles that we discuss in Part II of this opinion.

## A.

The "home state" provision of the U.C.C.J.A. was introduced to provide protection for a parent who remains in the home state after the other parent has taken the child away. In enacting that provision, the drafters of the act were attempting to mitigate the advantage enjoyed by the party who has physical possession of the child. JEFF ATKINSON, MODERN CHILD CUSTODY PRACTICE § 3.12, 192 (1986). The Commissioners' Note to the U.C.C.J.A. § 3 states:

The main objective [of the six month home state window] is to protect a parent who has been left by his spouse taking the child along. The provision makes clear that the stay at home parent ... may start proceedings in his own state.

Nothing in the U.C.C.J.A. provides that there can only be one "home state." In this case, there are two. Appellant sued for custody in Pakistan shortly after appellee vacated the marital home. While the Pakistani court had jurisdiction to do so, it conducted a full trial on the merits before awarding custody to appellant. Pakistan was the child's original "home state." Maryland has become the child's "home state" only because appellee, in disobedience of the Pakistani court, hid the child from appellant for over two years. Rare are the occasions on which a second home state should exercise jurisdiction acquired by disobedience of a custody order issued in the child's original home state.

### B.

The U.C.C.J.A. was enacted to halt child snatching and forum shopping:

> The Prefatory Note to the U.C.C.J.A. notes a growing public concern over the fact that thousands of children are shifted from state to state and from one family to another each year while their parents or other persons battle over their custody in courts of various states. Snatching children has become all too commonplace in our mobile society. Possession of the child has historically given one an enormous tactical advantage. More and more, those who lose a court battle are unwilling to accept the judgment of a particular court, and often relocate to another jurisdiction with a view toward having another court take a fresh look at the custody situation.

JOHN F. FADER, II & RICHARD P. GILBERT, MARYLAND FAMILY LAW, 167 (1990).

In *Lyons v. Lyons*, 227 Va. 82, 314 S.E.2d 362 (1984), the natural mother deserted the natural father and, without notifying him of her intent to do so, removed their minor children from Virginia to England. Once there, she obtained a custody order from an English court. When the natural father sued for custody in Virginia, the trial court refused to exercise

jurisdiction because of the custody proceedings pending in England. The Supreme Court of Virginia reversed, stating:

Given the facts of this case, a contrary view would encourage a race to the courthouse, the prize of custody being awarded to the swifter and more devious parent. We will not endorse such conduct in view of at least two important purposes of the U.C.C.J.A. applicable here: to deter unilateral removal of children to obtain foreign custody awards, and to assure that litigation over the child's custody occurs in the forum where the child and his family have the closest connection.

314 S.E.2d at 371.

It is difficult to quarrel with the proposition that "[t]he effect of assuming jurisdiction to determine child custody after there has been a wrongful taking or detention may be the encouragement of child snatching." *Brown v. Tan,* 395 So.2d 1249, 1252 (Fla.App. 3 Dist.1981). In this case, appellee unilaterally removed the child from Pakistan. Exercise of jurisdiction in this case would only encourage such behavior. The court must not, however, overlook the best interest of the child when responding to misbehavior by the child's parent.

In *Dean v. Dean,* 133 Mich.App. 220, 348 N.W.2d 725 (1984), the husband wrongfully retained the parties' two children in Texas beyond the agreed upon visitation period. The wife then surreptitiously removed them from Texas, and filed for custody in Michigan, where the children resided with her before their wrongful retention. The Michigan trial court declined jurisdiction, but that decision was reversed. The appellate court recognized that the wife's action in removing the children from Texas was improper, but was a reaction to the husband's wrongful retention and "not all wrongful action requires that jurisdiction be declined." *Id.* 348 N.W.2d at 727.

## II

FL § 9–208(a) provides:

If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar

reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

In *Stevens v. Stevens*, 177 N.J.Super. 167, 425 A.2d 1081 (1981), the Superior Court of New Jersey affirmed the trial court's dismissal of the natural mother's petition for custody because she had wrongfully removed the child from his father's custody in Arizona. While she was temporarily in Arizona, the natural mother took the child from the home of his babysitter and brought him to her home in New Jersey. The trial court refused to exercise jurisdiction over the dispute because of the natural mother's "reprehensible conduct." The Superior Court affirmed, stating:

> Since the only ... basis for jurisdiction in the [trial court] was established by the plaintiff removing Scott by taking him from the babysitter, if the trial court had entertained this action it would have frustrated the very purpose of [the U.C.C.J.A.].

*Id.* 425 A.2d at 1084.

In *State ex rel. Rashid v. Drumm*, 824 S.W.2d 497 (Mo.App. 1992), the child and the father were residents of Saudi Arabia. While they were in Missouri visiting the child's mother, the mother took the child from the father's custody. Without making any specific findings of fact, the Missouri trial court declined jurisdiction to decide the mother's complaint for custody. The appellate court reversed and remanded the case for further proceedings, stating:

> "In order for the court to decline under this section, it would have to have found that the petitioner had wrongfully taken the child ... and that [this] conduct constituted 'reprehensible conduct.'"

*Id.* at 502.

In this case, the child is in Maryland only because she was unilaterally removed from Pakistan without appellant's knowledge or consent. She has been here for the six month period immediately prior to this litigation only because appellee managed to escape detection. Until appellee fled from

Pakistan, the child had lived her entire life in that country. Appellant was never informed of his daughter's whereabouts and was able to locate her only with the help of private investigators.

For reasons set forth in Part III of this opinion, the circuit court must exercise jurisdiction over this dispute if the Pakistani court's decision was based on law that is contrary to Maryland public policy. Appellee's conduct, however, was indeed reprehensible under FL § 9–209. The costs of these proceedings shall therefore be assessed against appellee.

### A.

FL § 9–208(b) provides:

*Unless required in the interest of the child,* the court shall not exercise its jurisdiction ... if the petitioner, without the consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody.

(Emphasis added).

Appellee claims that the law in Pakistan is "outdated" and "at odds with virtually every modern jurisdiction." It will be necessary for appellee to prove that these contentions are true. In *State ex rel. Rashid v. Drumm, supra,* the appellate court emphasized the importance of an understanding of the law of the country to which jurisdiction would be conceded:

The trial court did hear evidence relating to the child's ties to and home in Saudi Arabia, but there was no evidence relating to child custody laws in Saudi Arabia, whether the courts there could and would adjudicate the controversy, if minimum due process would be accorded all parties to the proceedings, or if the best interests of the child would guide the custody determination.... Without evidence of these factors, the record is insufficient for us to reach the question of whether the trial court does or does not have jurisdiction under this section.

*824 S.W.2d at 504.*

In this case, the circuit court should decline to exercise jurisdiction unless persuaded that the Pakistani court either

(1) did not apply the best interest of the child standard when it awarded custody to appellant, or (2) arrived at its decision by applying a law (whether substantive, evidentiary, or procedural) so contrary to Maryland public policy as to undermine confidence in the outcome of the trial.

### B.

THE RESTATEMENT (SECOND) OF CONFLICTS § 90 (1971), provides: "No action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum." It is well settled that:

"... where [a foreign] judgment is tainted with ... an offense against public policy ... it will not be given any effect by our courts."

*Falcon Manufacturing v. Ames,* 53 Misc.2d 332, 278 N.Y.S.2d 684, 686 (N.Y.Civ.Ct.1967).

In *Al–Fassi v. Al–Fassi,* 433 So.2d 664 (Fla.App. 3 Dist. 1983), the husband was granted custody of the minor children by a court in the Bahamas. He and the children then moved to Florida, where his ex-wife sought to have the decree either set aside or modified. The husband responded that the Florida court could do neither, as the Bahamian decree was entitled to comity. The trial court agreed and dismissed the petition. The appellate court reversed, stating that the Bahamian decree was not entitled to comity because it was founded on principles offensive to the public policy of the state. Specifically, the court in the Bahamas based its decision on the risk of the children becoming "little americans" and of losing their royal inheritance if they remained with their mother. *Id.* at 667–668. The court explained:

"Comity must give way to the interests of the state in exercising *parens patriae* jurisdiction over the child with the objective of protecting the recognized best interests of the child."

433 So.2d at 668.

If the Pakistani court's custody order was founded on principles of law that are repugnant to Maryland public policy,

the Circuit Court for Baltimore County must exercise its jurisdiction. If the Pakistani court's determination was made without giving primary consideration to the best interest of the child, the circuit court must resolve this dispute by applying that standard. If the Pakistani court's determination was made on the basis of a rule of law or evidence or procedure so contrary to Maryland public policy as to undermine confidence in the outcome of the trial, the circuit court must exercise its jurisdiction and resolve this dispute by applying Maryland law.

■ On the record before us, we cannot determine whether Pakistani law lacks conformity with Maryland law. We can, however, resolve the narrow issue of whether the Pakistani order should be denied comity because there is a paternal preference in Pakistani law. If the only difference between the custody laws of Maryland and Pakistan is that Pakistani courts apply a paternal preference the way Maryland courts once applied the maternal preference, the Pakistani order is entitled to comity. A custody decree of a sister state whose custody law contains a preference for one parent over another would be entitled to comity, provided, of course, that the sister state's custody law applies the best interest of the child standard. For example, although Maryland has abolished a maternal preference, FL § 5–203, *McAndrew v. McAndrew*, 39 Md.App. 1, 8–9, 382 A.2d 1081 (1978), four states (Alabama, Florida, Mississippi, and Tennessee) still maintain the maternal preference doctrine in some form.[1] A Maryland court would not refuse to enforce an award of custody made by a court of competent jurisdiction in any of those states. A Maryland court should not, therefore, refuse to enforce a Pakistani custody order merely because a paternal preference is found in that country's law.

---

1. *See, DeCamp v. Hein*, 541 So.2d 708, 709–710 (Fla.Dist.Ct.App.1989); *McGregor v. McGregor*, 571 So.2d 1145, 1146 (Ala.Civ.App.1990); *Carr v. Carr*, 480 So.2d 1120, 1123 (Miss.1985); TENN.CODE ANN. § 36–6–101(d) (Michie Supp.1987).

*III*

On remand, the circuit court must first determine whether the Pakistani court applied law that is in substantial conformity with Maryland law. That determination requires the presentation of evidence. *See* Md.Code (1974, 1991 Repl.Vol.), § 10–505 of the Courts and Judicial Proceedings Article. The Pakistani court's custody order is presumed to be correct, and this presumption shifts to appellee the burden of proving by a preponderance of evidence that (1) the Pakistani court did not apply the "best interest of the child" standard, or that (2) in making its decision, the Pakistani court applied a rule of law or evidence or procedure so contrary to Maryland public policy as to undermine confidence in the outcome of the trial. If either (1) or (2) is proven, the circuit court must conclude that the law of Pakistan is so lacking in conformity with the law of Maryland that comity cannot be granted to the Pakistani custody order. Unless either is proven, however, the Circuit Court shall decline to exercise its jurisdiction and shall grant comity to the Pakistani custody decree.

For the guidance of the parties and the circuit court, we shall address an issue that is certain to arise if the circuit court must resolve this dispute in accordance with Maryland law: how much weight should be given to the fact that appellee removed the child from Pakistan to the United States? There is respectable authority for the proposition that the act of removing children from the jurisdiction of the court is "so inconsistent with the best interests of the children as to, per se, raise a strong probability that the (guilty party) is unfit to act as custodial parent." *Entwistle v. Entwistle,* 61 A.D.2d 380, 402 N.Y.S.2d 213, 216 (2 Dept.1978). The courts that apply this principle have also acknowledged that such conduct is by no means "absolutely dispositive of the best interests issue." *Dorsett v. Dorsett,* 93 A.D.2d 854, 461 N.Y.S.2d 354, 355 (2 Dept.1983).

We conclude that use of terms like "probability" or "presumption of unfitness" creates the danger that too much emphasis will be placed on the removal of the child and too

little emphasis will be placed on the circumstances that preceded the removal. The Court of Appeals has pointed out that

> ... the very difficulty of the decision-making process in custody cases flows in large part from the uniqueness of each case, the extraordinarily broad spectrum of facts that may have to be considered in any given case, and the inherent difficulty of formulating bright-line rules of universal applicability in this area of the law.

*Domingues v. Johnson,* 323 Md. 486, 501, 593 A.2d 1133 (1991).

Proof that a parent has removed the child from the jurisdiction of the court is a relevant evidentiary fact that may be weighed against that parent. *Cooke v. Cooke,* 21 Md.App. 376, 381–382, 319 A.2d 841 (1974). How much weight that fact should be given, however, depends on the other relevant facts that are applicable to the particular case.

**JUDGMENT NEITHER AFFIRMED NOR REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**