*In re* MARRIAGE OF TYLER LEE ALEXANDER, Petitioner-Appellee, and FRANCES MARIE ALEXANDER, Respondent-Appellant.

Fourth District   No. 4—93—0284

Argued October 19, 1993.—Opinion filed November 15, 1993.

Jayne A. Durham, of Land of Lincoln Legal Assistance Foundation, Inc., of Mattoon, for appellant.

Glenn A. Braden, of Braden Law Office, of Neoga, for appellee.

JUSTICE COOK delivered the opinion of the court:

On July 11, 1986, petitioner-appellee Tyler Lee Alexander and respondent-appellant Frances Marie Alexander were married in San Antonio, Texas. The couple had two children: Callie was born on August 1, 1987, and Katy was born on May 16, 1989.

On February 23, 1991, Frances and the two children moved in with Frances' aunt. Tyler remained in the marital home. In March, Tyler filed a petition for divorce (No. 91—CI—03356) in the 45th Judicial District, Texas, through his attorney, Marion S. Dyches. Dyches prepared a draft final decree of divorce which incorporated a marital settlement agreement providing for joint custody with Frances remaining residential custodian. Both parents signed an undated signature page on the draft final decree of divorce. In addition, Frances signed a "Waiver of Citation" (entry of appearance) at Dyches' office.

On August 16 Tyler and his new attorney, without Frances' knowledge but with her waiver of citation, appeared in the Texas court and presented a final decree of divorce. This decree, however, awarded Tyler sole custody of the children and most of the marital property. That same day, Tyler's father helped move Tyler and the girls into the Toledo, Illinois, home of Tyler's parents.

Frances retained a Texas attorney on August 28, who filed a motion for a new trial; the motion was set for hearing by the court. Subsequently, on September 26, Tyler filed a motion for nonsuit, without disclosing to the court that he now lived in Illinois with his two daughters. The motion was granted that same day.

On September 30, Tyler filed a petition for dissolution of marriage in Illinois and a petition for emergency order of protection. The petition for emergency order of protection was heard that day, without notice to Frances, on an *ex parte* basis. Tyler testified Frances used inappropriate methods of discipline upon the children, and his testimony was corroborated by Cindy Mills, a mental health therapist who

had met with the girls on several occasions. Mills testified that Callie's abuse of the mother doll during "play therapy," along with Callie's expressed fears of her mother and of returning to Texas, convinced her that the children had in fact been abused by their mother and that any visitation rights granted to Frances should be supervised. Based on the evidence presented at this hearing, the Illinois court issued an emergency order of protection which awarded temporary custody to Tyler, and prohibited the children's removal from Illinois.

Frances filed a petition for dissolution of marriage in the Texas 57th Judicial District on October 2 (No. 91—C—14740), in which she requested custody of the girls. On October 21, Tyler's Illinois attorney asked the Illinois trial court to extend the emergency order of protection until Frances had been personally served with summons, and to enjoin her from proceeding further with Texas case No. 91—C—14740. The court did so and scheduled an appearance date for November 8, 1991. On that date, Tyler's attorney notified the court that he had been contacted by Frances' Illinois attorney, furnished by the Land of Lincoln Legal Assistance Foundation, who requested a continuance. On December 23, 1991, because the attorney had not appeared, the Illinois trial court dissolved the marriage on the grounds of mental cruelty and reserved all other issues.

On February 18, 1992, Frances filed in Illinois a motion for leave to file special appearance for the purpose of vacating the *ex parte* order of protection and dismissing all other petitions filed. She alleged the trial court did not have subject-matter jurisdiction under the Uniform Child Custody Jurisdiction Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 2101 *et seq.*). The trial court heard the motion on May 4, 1992, and decided that it had personal jurisdiction over Frances due to her pleadings (which included a request for visitation rights) and the subpoena her attorney had issued to Cindy Mills. However, the court agreed with Frances that it did not have subject-matter jurisdiction over the cause before it. Parenthetically, we note, as did Justice Underwood in *Siegel v. Siegel* (1981), 84 Ill. 2d 212, 221, 417 N.E.2d 1312, 1316, that "jurisdiction" is not used in the Act in its traditional subject matter sense, but in the sense of a limitation upon the existing jurisdiction. Although we have reservations regarding the statutory language, we believe it will be less confusing if we adhere to it.

Tyler then requested the court reconsider its decision, based upon the Act's emergency provision, section 4(a)(3)(ii) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 2104(a)(3)(ii)). The trial court reconsidered and determined emergency circumstances did exist which allowed it to

consider custody. The court then determined, over objection, that it would simultaneously allow Tyler to present evidence on his petition for dissolution of marriage on the issue of *permanent* custody. Three witnesses testified on Tyler's behalf. At the subsequent hearing on August 17, 1992, evidence was presented on each party's behalf. Further testimony was heard on November 6, 1992.

On February 11, 1993, the court entered a memorandum of opinion finding it had subject-matter jurisdiction over the two children; the court did not base its finding on the emergency provision of section 4(a)(3)(ii) of the Act, but upon the fact that the cause had a significant connection with the State of Illinois, and that there existed in Illinois substantial evidence of the children's present and future care, protection, training and personal relationships. An order was filed on March 2, granting permanent custody of the children to Tyler and allotting Frances three weeks' visitation per year. This appeal followed.

■■ There are four bases upon which a circuit court may assume jurisdiction for a child custody determination under the Act: the home State, significant connections, emergency, and residual bases. (Ill. Rev. Stat. 1991, ch. 40, par. 2104(a) (see 750 ILCS 35/4(a) (West 1992)).) In this case, the trial court could not assume jurisdiction upon the home State basis because the children had not lived in Illinois for six months prior to the time this action was filed. (Ill. Rev. Stat. 1991, ch. 40, pars. 2103.04, 2104(a)(1) (see 750 ILCS 35/3.04, 4(a)(1) (West 1992)).) Texas was clearly the home State of these children. Under Federal law, the Parental Kidnapping Prevention Act of 1980 (Pub. L. 96–611, 94 Stat. 3573 (Dec. 28, 1980)), the children's home State has exclusive jurisdiction to proceed. See 28 U.S.C. §1738A(c)(2)(B) (1988).

The trial court did find that an emergency situation existed which allowed it to accept jurisdiction. However, a trial court may not issue a permanent custody order when its jurisdiction is based solely upon the emergency provision. (*Gainey v. Gainey* (1992), 237 Ill. App. 3d 868, 871, 604 N.E.2d 950, 952.) "This emergency jurisdiction provision is meant solely to prevent irreparable and immediate harm to children, and *** does not confer *** authority to make a permanent custody determination." (*Gainey*, 237 Ill. App. 3d at 871, 604 N.E.2d at 952.) The trial court, nevertheless, indicated that the issues of jurisdiction and custody were hopelessly interrelated and ultimately agreed to hear evidence regarding "the entire gambit of the custody issue." In doing so, the court allowed Tyler to profit by moving this litigation from a court where it was

pending, and where he might be at a disadvantage, to another court where Frances would have difficulty being present.

■ A permanent custody order may be issued where jurisdiction is based on any of the Act's section 4 bases other than the emergency basis (Ill. Rev. Stat. 1991, ch. 40, par. 2104(a)(3)). The "significant connection" provision of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 2104(a)(2) (see 750 ILCS 35/4(a)(2) (West 1992))), section 4(a)(2), affords jurisdiction if:

"2. [I]t is in the best interest of the child that a court of this State assume jurisdiction because

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships."

The trial court initially found a significant connection because "the State of Illinois [is] the paternal ancestral home of the minor children." Historical connections unrelated to the present life of the children do not amount to a "significant connection." Even if they did, although Tyler's parents were reared in Illinois, they moved to Texas and resided there for many years, returning to live in Illinois only 2½ years before this suit was commenced. The trial court further noted that Tyler and his parents and unidentified other relatives reside in Illinois, and that the girls have spent vacations in Illinois and "associated with family and friends in Illinois during their entire lives." In fact, Tyler moved to Illinois a mere 45 days before he filed suit here. The girls have spent only two vacation periods in Illinois, both during the summer of 1991, when their parents were separated.

■ "[T]he term 'substantial evidence' in the statute was not intended to be used as a substitute for 'some evidence,' as may be used in other contexts, but was rather intended to require a high degree of connection and access to evidence." (*In re Marriage of Miche* (1985), 131 Ill. App. 3d 1029, 1032, 476 N.E.2d 774, 776-77, citing *In re Marriage of Levy* (1982), 105 Ill. App. 3d 355, 362, 434 N.E.2d 400, 405.) The Commissioners' Note to subsection 2 indicates that paragraph two (Ill. Rev. Stat. 1979, ch. 40, par. 2104(a)(2)(ii)) was intended " 'to limit jurisdiction rather than to proliferate it' " and " '[t]he interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with

the state.' " *Levy*, 105 Ill. App. 3d at 362, 434 N.E.2d at 405, quoting 9 U.L.A. 124 (1979).

Tyler has not established sufficient contacts with the State of Illinois for a court here to accept child custody jurisdiction. Tyler and Frances were married in Texas, and Callie and Katy were born there and spent the first four and two years of their lives, respectively, there. Tyler held a job in Texas for 12 years, and the family resided in a home there for over five years. In addition, the children's medical records remain in Texas, as do the family's friends and neighbors, and Frances' family resides in Texas. Litigation in which both parties had appeared was pending, and had been pending, in Texas. No such nexus of contacts existed in Illinois. Except for the presence of Tyler's parents in Illinois, Illinois has no more connection with these children than would Idaho or Alaska if Tyler had chosen to move there, and been allowed to remain for a year and a half.

The facts of *Miche* further support our determination that the contacts with Illinois in this case were not adequate to constitute a "significant connection." In *Miche*, two of the three children attended school in Illinois for an entire year, the eldest child was presently enrolled in a special program for the learning disabled, and the father had remarried and his children were part of an extended family which included their stepmother, stepbrother and two stepsisters. (*Miche*, 131 Ill. App. 3d at 1033, 476 N.E.2d at 777.) However, the children had spent nearly all their lives, and received all of their schooling, in California prior to the divorce, and the mother and youngest child remained in California. The contacts here are even more minimal than in *Miche* and are not sufficient for jurisdiction.

■ Even if significant connections were established to vest the court with subject-matter jurisdiction in this case, a circuit court should decline to exercise jurisdiction "[i]f the petitioner for an initial judgment has wrongfully taken the child from another state or has engaged in similar reprehensible conduct." (Ill. Rev. Stat. 1991, ch. 40, par. 2109(a) (see 750 ILCS 35/9(a) (West 1992)).) Tyler argues that Frances cannot claim he "wrongfully" took the girls from Texas, for when he left Texas he "did so with a valid Texas custody judgment." It is ironic that Tyler would attempt to rely upon the Texas judgment on the one hand, and seek to nullify it on the other. Even assuming the children were not wrongfully taken from Texas (because of the Texas custody judgment), we have no difficulty classifying Tyler's actions as "similar reprehensible conduct": when

Tyler substituted a decree awarding him sole custody for the one agreed upon, then nonsuited the Texas case to avoid resolution of the entry of appearance issue, then filed for divorce and custody in Illinois, he engaged in forum shopping and fraud against the Texas court. Tyler argues Frances' entry of appearance was a general one, not conditioned upon the entry of a specific decree. That issue is one to be decided by the Texas court, however, and it is Tyler who has refused to proceed there. Tyler's conduct embodies the type of activity section 9(a) of the Act was designed to prevent, and even if an Illinois jurisdictional base existed, the trial court should have declined to proceed further.

Moreover, when a court assumes jurisdiction under the Act, it must then comply with the mandatory interstate notice and consultation provisions, sections 7(b) and 7(c) of the Act:

"(b) *** If the court has reason to believe that proceedings *may* be pending in another state it *shall* direct an inquiry to the state court administrator or other appropriate official of the other state.

(c) *** If the court is informed that a proceeding was commenced in another state *after* it assumed jurisdiction it *shall* likewise inform the other court to the end that the issues may be litigated in the most appropriate forum." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 40, pars. 2107(b), (c).

Tyler argues that Texas case No. 91—CI—03356 had been dismissed, that no cause was pending, and that there was no one with whom the Illinois court could communicate. Under the circumstances the court should have communicated with the Texas court which dismissed case No. 91—CI—03356. In any event, Texas case No. 91—C—14740 was pending, and the Illinois court was required to communicate with the court in which it was filed. Under section 7(c) of the Act, the trial court had a duty, at the very least, to inform the Texas court of its assumption of jurisdiction.

Section 8(a) of the Act contains a *forum non conveniens* provision which allows a court with subject-matter jurisdiction to decline to exercise its jurisdiction if it finds, under the circumstances, that a court in another State is a more appropriate forum. (Ill. Rev. Stat. 1991, ch. 40, par. 2108(a) (see 750 ILCS 35/8(a) (West 1992)).) The factors a trial court shall consider in determining whether a more convenient forum exists are similar to those it considers in determining whether it has subject-matter jurisdiction: whether another State is or recently was the child's home State, whether another State has a closer connection with the child and his or her

parents, and whether substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available in another State. (Ill. Rev. Stat. 1991, ch. 40, par. 2108(c) (see 750 ILCS 35/8(c) (West 1992)).) Here, those factors weigh heavily in favor of the State of Texas. Even if there was a significant connection with the State of Illinois, the trial court should have declined jurisdiction in favor of Texas. As said in *Miche*, the facts here constitute " 'some evidence' of a connection with this State, [but] we do not believe they constitute facts sufficient to render Illinois the State with which the family has the closest connection." *Miche*, 131 Ill. App. at 1033, 476 N.E.2d at 777.

Tyler argued to the trial court that Frances was abusive to the children and that her relatives in Texas were drug traffickers and sex abusers. We recognize the trial court felt an obligation to intervene and ensure the protection of these children. Competition between courts is fostered, however, when a court where the children happen to be decides it must act, despite the fact that a court in another State is better situated to do so. Whatever protection was necessary for these children could and should have been accomplished on the basis of emergency jurisdiction in Illinois.

Accordingly, we reverse and remand to the trial court, with instructions that Tyler may retain temporary custody of the children pending further order by the Texas court. The trial court should contact the Texas court and schedule a date on which it may order Tyler and the children to appear in Texas. (Ill. Rev. Stat. 1991, ch. 40, par. 2120.) If the Texas court is unwilling to proceed, the trial court should consider whether it may have residual jurisdiction. In addition, the trial court should consider whether Tyler should be required to pay costs and attorney fees under section 8(g) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 2108(g)).

Reversed and remanded.

STEIGMANN, P.J., and GREEN, J., concur.