676 A.2d 944

**Jennifer Louise HARRIS**

v.

**Craig A. SIMMONS et al.**

**No. 1233, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

May 3, 1996.

Reconsideration Denied June 25, 1996.

96

Benjamin J. Woolery (Richard M. McGill, on the brief), Upper Marlboro, for Appellant.

Anne Meister, Washington, DC, for Appellees.

Argued before CATHELL, SALMON and EYLER, JJ.

SALMON, Judge.

The parties to this appeal are battling for custody of Brittany K., the 6–year–old daughter of appellant Jennifer Harris (*nee* Simmons). The principal issue presented is whether

South Carolina had subject-matter jurisdiction to make a permanent custody determination.

Brittany was born on April 4, 1990. Her natural father, Robert K., died in August 1992. Until appellant was admitted to the psychiatric ward of Fairfax General Hospital in February 1993, she and Brittany lived in various homes in Maryland. Craig and Ann Simmons ("the Simmonses"), Brittany's maternal grandfather and his wife, took in Brittany when Mrs. Harris was admitted to the hospital. After her release, appellant and the Simmonses entered into a voluntary "Care, Custody and Support Agreement" on May 2, 1993, which sought to "ensure stability for Brittany until she reaches school age or until such time as Jennifer Simmons is able to provide a stable and secure living arrangement for both herself and Brittany," by allowing Brittany to continue living with the Simmonses. Brittany lived with the Simmonses until August 27, 1993, when appellant changed her mind and insisted that her daughter again reside with her. For the next seven months, Brittany lived with her mother and step-father, Louis Edward Harris, Jr.[1]

Mr. Simmons, with appellant's consent, picked up Brittany on April 8, 1994 for a pre-arranged period of visitation. The Simmonses planned to have Brittany visit them in their new home in Horry County, South Carolina. The three-week visit was scheduled to allow appellant time to recover from the birth of her second child. Mr. Simmons's daughter, Mary (appellant's sister), discovered bruises and welts on Brittany's buttocks and legs shortly after the visitation period began. Upon arrival in South Carolina, the Simmonses had Brittany's injuries examined by a physician, who reported possible child abuse to the South Carolina Department of Social Services. South Carolina notified the Prince George's County Department of Social Services (PGDSS) that it was investigating the possible abuse of Brittany. PGDSS made an independent finding of child abuse on May 9, 1994.

---

1. Appellant married Mr. Harris on October 1, 1993.

Brittany told appellees and her treating physicians that her stepfather beat her with a belt, causing the bruising. Mr. Harris was contacted, and he admitted that he had hit Brittany with his belt once on each of two different occasions, both on April 5, 1994. Appellant and her husband maintained, however, that the bruising was not the result of Mr. Harris's use of the belt but was instead the result of Brittany falling off playground equipment on April 4, 1994.

## Proceedings in South Carolina

The litigation leading to this appeal began on April 19, 1994 when appellees filed for custody of Brittany in the Circuit Court for Horry County, South Carolina. That same day, the court issued an *ex parte* emergency order granting temporary physical custody of Brittany to the Simmonses, stating, "Without determining whether this Court has on-going jurisdiction in this matter, the facts found above [that Brittany has been physically abused] gives this Court emergency jurisdiction to enter necessary and appropriate orders."

Appellant filed a motion to dismiss "Due to Forum Being Inconvenient." The South Carolina court issued an order on June 27, 1994, awarding temporary custody of Brittany to appellees pending trial. The court referred to Maryland as Brittany's "former home state" and cited, as bases for exercising jurisdiction, the emergency and "significant connections" test of the South Carolina Uniform Child Custody Jurisdiction Act ("UCCJA"). The order was captioned "Final as to Jurisdiction."

A permanent custody hearing was held on January 26, March 7, and March 9 of 1995. The South Carolina court granted permanent custody to the Simmonses on April 7, 1995, stating, "The prior, unappealed final order as to jurisdiction is binding upon this Court, and is the law of this case."

## Proceedings in Maryland

On May 9, 1994, twenty days after the Simmonses instituted suit in South Carolina, appellant filed a complaint in the Circuit Court for Prince George's County, Maryland, seeking

custody of Brittany under Maryland's UCCJA, alleging that Maryland was Brittany's "home state." [2]

The circuit court (Ahalt, J., presiding), after a hearing on July 7, 1994 on the issue of Maryland's jurisdiction over Brittany's custody, found that Maryland was Brittany's home state and that South Carolina had not "exercised jurisdiction substantially in conformity" with the UCCJA. The Simmonses filed alternative motions to dismiss the complaint pending in Prince George's County, or to stay the proceedings, on July 12, 1994. The Simmonses argued that Maryland should not exercise jurisdiction because they had already obtained a custody decree in South Carolina. Appellant responded by arguing that South Carolina should have declined to exercise jurisdiction once an action was commenced in Maryland, the more appropriate jurisdiction.

Judge Ahalt presided over a review hearing on the issue of temporary custody and visitation on July 29, 1994. He once again found that Maryland was Brittany's home state. He further found that South Carolina had no basis to exercise continuing jurisdiction.

That same day, Master Julia B. Weatherly of the circuit court presided over a *pendente lite* hearing on the custody issue. She recommended that custody be awarded to the Simmonses. She also recommended that Mrs. Harris be granted telephone access to and visitation with Brittany, provided that Mr. Harris was not present and had no contact with Brittany.

---

**2.** FL § 9–201(f) defines "home state" as

> the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6–month or other period.

See also S.C.CODE ANN. § 20–7–786(5) (Law.Co-op.1985), which is substantively the same.

The Simmonses filed a "Motion for Finding of Inconvenient Forum" on March 6, 1995. They asked the Maryland court to decline to exercise jurisdiction over the custody matter. Appellant again argued that South Carolina should have exercised its jurisdiction only until an action was filed in Maryland.[3]

The circuit court (Smith, J., presiding) heard argument on the motion to dismiss[4] on May 25, 1995 and granted the motion on June 23, 1995. This timely appeal followed, which presents the following question:

Did the South Carolina court properly exercise jurisdiction under the UCCJA to award permanent custody?

We answer in the negative, thereby reversing the grant of appellees' motion to dismiss, and remand for further proceedings. Until those proceedings have concluded, South Carolina's grant of temporary custody to appellees shall remain in effect.

## DISCUSSION

### I.

█ The UCCJA is codified in Maryland Code (1984, 1991 Repl.Vol.), §§ 9–201 to –224 of the Family Law Article ("FL"). It controls which state has subject-matter jurisdiction over child custody cases. *See In re Marriage of Ben–Yehoshua,* 91 Cal.App.3d 259, 154 Cal.Rptr. 80, 83 (1979); *Renno v. Evans,* 580 So.2d 945, 948 (La.Ct.App.1991); FAMILY LAW & PRACTICE § 32.03[4] (Arnold H. Rutkin, general ed. 1990). The UCCJA was proposed in 1968 in response to problems of interstate enforcement of custody decrees. By September 1984, all fifty states had adopted it. FAMILY LAW, supra, §32.03[4][a], at 32-43.

---

3. Apparently, no action was ever taken on this motion, although Judge Smith expressly found that Maryland was not an inconvenient forum. *See, infra,* note 13.

4. The Simmonses filed only one motion to dismiss; that was on July 12, 1994.

The general purposes of the UCCJA are to avoid jurisdictional conflict with courts of other states; to assure that litigation takes place in the state with which the child and the child's family have the closest connection and where significant evidence concerning the child's care, protection, and personal relationships is most readily available, and that courts decline to exercise jurisdiction when the child and the child's family have a closer connection with another state; and to avoid relitigation of custody decisions of other states "insofar as feasible." FL § 9–202(a); *see also* S.C.CODE ANN. § 20–7–784 (Law.Co-op.1985) ("S.C.CODE"). A court issuing a custody decree retains jurisdiction for future modifications so long as the parties have requisite ties to that state. FL § 9–214; *see also* S.C.CODE § 20–7–810.

The UCCJA bases jurisdiction on four grounds, only the first three of which are relevant to this case.

(a) *Grounds for jurisdiction.*—A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination . . . if:

(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceedings and the child is absent from this State because of the child's removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this State;

(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least 1 contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been

subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with items (1), (2), or (3) of this subsection or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

(b) *Effect of physical presence.*—Except under subsection (a)(3) and (4) of this section, physical presence in this State of the child, or of the child and 1 of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.

FL § 9–204. *See also* S.C.CODE § 20–7–788.

Neither party disputes that South Carolina had emergency jurisdiction based on the bruising evident on Brittany's body. What is hotly disputed is whether the South Carolina circuit court had jurisdiction to issue a decree granting permanent custody.

### A. FL § 9–204(a)(3) and S.C.CODE § 20–7–788(a)(3)

■ Subsection (a)(3) of FL § 9–204 and S.C.CODE § 20–7–788 are identical. Both allow a court to decide custody matters if the child is physically present in the state and it is necessary in an emergency to protect the child because he or she has been subjected to abuse. In *Malik v. Malik,* 99 Md.App. 521, 638 A.2d 1184 (1994), we held that emergency jurisdiction based on FL § 9–204(a)(3) is temporary, and only preserves " 'the status quo for such limited time as is required to permit the petitioner to apply for a change of permanent custody to the state which has jurisdiction over such petition under the U.C.C.J.A.' " *Id.* at 527, 638 A.2d 1184 (quoting *Nussbaumer v. Nussbaumer,* 442 So.2d 1094, 1097 (Fla.Dist. Ct.App.1983)). Neither FL § 9–204(a)(3) nor S.C.CODE § 20–7–788(a)(3) gives a court authority to make a decision as to

permanent custody. This result is in accord with the decisions in other states.[5] The order granting temporary custody of Brittany to appellees pending trial, therefore, was appropriate. We must now determine whether South Carolina had an independent basis of authority that would allow it to continue exercising jurisdiction on a non-emergency basis and to issue a permanent custody order.

## B. FL § 9–204(a)(2) and S.C.Code § 20–7–788(a)(2)

Subsection (a)(2) of FL § 9–204 and S.C.Code § 20–7–788 use identical language. If it is in the child's best interest,

---

5. *See, e.g., Iacouzze v. Iacouzze,* 137 Ariz. 605, 672 P.2d 949, 952 (emergency jurisdiction is temporary), *aff'd* 137 Ariz. 584, 672 P.2d 928 (1983); *Brock v. District Court of Boulder,* 620 P.2d 11, 14 (Colo.1980) (relief should not extend beyond temporary protective order); *Trader v. Darrow,* 630 A.2d 634, 638 (Del.1993) ("Emergency jurisdiction in the UCCJA confers authority to make only temporary orders"); *Rothman v. Rothman,* 599 So.2d 260, 261 (Fla.Dist.Ct.App.1992) (Georgia's emergency jurisdiction did not give it subject-matter jurisdiction to make permanent custody determination); *In re Marriage of Alexander,* 252 Ill.App.3d 70, 191 Ill.Dec. 331, 333, 623 N.E.2d 921, 923 (1993) (court may not issue permanent custody order when jurisdiction is based solely on emergency provision of UCCJA); *Matter of E.H. and L.H.,* 612 N.E.2d 174, 185 (Ind.Ct.App.) (court should assume temporary jurisdiction only for duration of the emergency), *adopted in* 624 N.E.2d 471 (Ind.1993); *Umina v. Malbica,* 27 Mass.App.Ct. 351, 538 N.E.2d 53, 58 (1989) (temporary order is all trial court has authority to make based on emergency jurisdiction); *Curtis v. Curtis,* 574 So.2d 24, 28 (Miss. 1990) (court had temporary emergency jurisdiction); *Hache v. Riley,* 186 N.J.Super. 119, 451 A.2d 971, 975–76 (1982) (court must relinquish jurisdiction after protective measures connected with the assumption of emergency jurisdiction have been taken); *Hughes v. Black,* 863 S.W.2d 559, 560 (Tex.Ct.App.1993) ("jurisdiction to enter temporary emergency order does not confer jurisdiction to determine custody permanently"); *Curtis v. Curtis,* 789 P.2d 717, 723 (Utah.Ct.App.1990) (emergency jurisdiction entitles court to make temporary custody determination that lasts only as long as necessary to determine which court was the correct forum). *See also* Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA,* 14 Fam L.Q. 203, 205 (1981) ("special power to take protective measures does not encompass jurisdiction to make permanent custody determinations") (Bodenheimer was reporter for the UCCJA); James M. Hult, *Temporary Custody Under the Uniform Child Custody Jurisdiction Act: Influence Without Modification,* 48 U.Colo.L.Rev. 603 (1977).

In fact, we found no cases that held, contrary to *Malik,* that jurisdiction based on an emergency allows a court to grant permanent custody.

both statutes allow a court to decide a child custody matter if the child and at least one contestant have a "significant connection" with the state and there is available in the state "substantial evidence concerning the child's present or future care, protection, training, and personal relationships." South Carolina's final order as to jurisdiction was based on the fact that it first had gained emergency jurisdiction and also on the "significant connections" test set forth in S.C.CODE § 20–7–788(a)(2).[6] We stated in *Malik* that jurisdiction based on the significant connections test of FL § 9–204(a)(2) should " 'limit jurisdiction, not proliferate it.' " *Id.* at 528, 638 A.2d 1184 (quoting *Olson v. Olson*, 64 Md.App. 154, 165, 494 A.2d 737 (1985)); *see also* UNIF.CHILD CUSTODY JURIS.ACT § 3 cmt., 9 U.L.A. 145 (1988).[7]

The UCCJA must be read in conjunction with the

---

6. The June 27 order issued by the South Carolina court set forth the court's rationale for asserting jurisdiction as follows:

1. Due to the allegations raised and the reports of both doctors and DSS, this Court had emergency jurisdiction to enter necessary and appropriate orders. Moreover, the mere presence of the child in this State, gives this Court original jurisdiction concerning questions of custody under South Carolina Law. As a result, the burden is upon Mother to establish adequate reasons why this Court should decline to exercise its authority.

. . . .

11. This Court clearly has jurisdiction to entertain this action pursuant to S.C.Code Ann. § 20–7–788(a)(2) and (3). . . . Consequently, relinquishing jurisdiction is a discretionary decision by the Court, and one this Court declines to elect.

. . . .

13. Maryland was the child's former "home state" at the time this action was filed. However, South Carolina presently has a "closer connection" with Brittany under the facts of this case. . . .

. . . [S]ubstantial evidence concerning the child's *present or future* care, protection, training and personal relationships are more readily available in this state than in Maryland.

(Footnotes omitted.) (Emphasis in original.)

7. South Carolina's intermediate appellate court has stated that "[j]urisdiction founded upon the 'significant connection' provisions of the [UCCJA] should not be exercised hastily and the Act must be interpreted in the spirit of its legislative purpose. . . ." *Cullen v. Prescott*, 302 S.C. 201, 394 S.E.2d 722, 725 (Ct.App.1990).

federal Parental Kidnapping Prevention Act ("PKPA").[8] This

8. Congress passed the PKPA in 1980. The Act gives priority to home states by granting exclusive and continuing jurisdiction to the home state as long as one contestant is still living there. *See* FAMILY LAW, *supra*, § 32.03[4][c] at 32–46. The PKPA requires states to enforce the custody orders of sister states, unless the sister state did not have jurisdiction under the relevant statutes. *Id.* § 32.03[4], at 32–41. The Act provides:

§ 1738A. **Full faith and credit given to child custody determinations**

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify . . . any child custody determination made consistently with the provisions of this section by a court of another State.

(b) As used in this section, the term—

(4) "home state" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period. . . .

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse. . . .

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this

Court has held that when a child has a home state, the PKPA "forbids the use of significant connections as the basis for jurisdiction in child custody litigation." *Malik, supra,* 99 Md.App. at 528, 638 A.2d 1184.[9]

■ At the times the South Carolina and the Maryland actions were filed, Maryland was Brittany's "home state" within the meaning of the PKPA and UCCJA. Until April 8, 1994, Brittany had resided in Maryland for her entire life. Furthermore, the home state rule is extended for an additional six-month period after the child leaves. FL § 9–204(a)(1)(ii). "The provision makes clear that the [parent in the home state], if he acts promptly, may start proceedings in

---

section continues to be met and such State remains the residence of the child or of any contestant.

. . . .

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 U.S.C.A. § 1738A (1988).

9. *Etter v. Etter,* 43 Md.App. 395, 405 A.2d 760 (1979), had facts and a procedural history somewhat similar to the case *sub judice*—except that Maryland used "significant connections" instead of "home state" as a jurisdictional basis. In *Etter,* 13–year–old Troy, who was living in Delaware with his father, called his mother, who had moved to Maryland a few months before, and asked that she come get him. She did. The Circuit Court for Howard County signed an *ex parte* order on Friday, August 11, 1978, granting temporary custody of Troy to his mother. There was evidence that the hearing for the *ex parte* order was heard and the order was granted after the clerks' office had closed for the day. The custody petition was not filed, however, until Monday, August 14. Meanwhile, at 4:02 p.m. on Friday, August 11, the father filed a custody petition in the Family Court of Delaware. *Id.* at 396, 405 A.2d 760. When the Delaware court learned that a petition had been filed in Maryland, it stayed further proceedings in Delaware. *Id.* at 397, 405 A.2d 760. A custody hearing was held in Maryland in September. The trial judge found that Maryland had jurisdiction and awarded custody to the mother. *Id.* This Court upheld the lower court, citing the "significant connections" basis for jurisdiction. *Id.* at 398–99, 405 A.2d 760.

*Etter* is distinguishable from the case *sub judice* because it was decided prior to enactment of the PKPA in 1980. As made clear in *Malik,* we are bound by the provisions of the PKPA.

his own state if he desires, without the necessity of attempting to base jurisdiction on" significant connections. UNIF.CHILD CUSTODY JURIS.ACT § 3 cmt., 9 U.L.A. at 144. The South Carolina court was incorrect, therefore, in stating in its June 27, 1994 order that Maryland was Brittany's "former" home state. At the time the custody action was filed in South Carolina, Brittany had been out of Maryland for approximately ten days. Because Maryland was still Brittany's home state, the South Carolina court could not base its exercise of jurisdiction upon significant connections. *Malik, supra,* 99 Md.App. at 528, 638 A.2d 1184. The South Carolina court's reliance on S.C.CODE § 20–7–788(a)(2) was therefore misplaced.

## C. Full faith and credit

 The UCCJA and the PKPA compel a state to give full faith and credit to a valid custody decree entered by a sister state. *See* 28 U.S.C. § 1738A(a); FL § 9–213; [10] S.C.CODE § 20–7–808. The comment to the uniform version of the UCCJA states that recognition and enforcement of a custody decree is mandatory "if the state in which the prior decree was rendered 1) has adopted this Act, 2) has statutory jurisdictional requirements substantially like this Act, or 3) would have had jurisdiction under the facts of the case if this Act had been the law in the state." UNIF.CHILD CUSTODY JURIS.ACT § 13 cmt., 9 U.L.A. at 276. Courts, while parroting this language, *see, e.g., Thompson v. Hair,* 146 Mich.App. 561, 381 N.W.2d 765, 767 (1986), have looked at the basis under which the other state exercised jurisdiction in order to deter-

---

10. Section 9–213 of the Family Law Article provides:

The courts of this State shall recognize and enforce an initial decree or modification decree of a court of another state that had assumed jurisdiction under statutory provisions substantially in accordance with this subtitle, or that was made under factual circumstances meeting the jurisdictional standards of the subtitle, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this subtitle.

mine whether the sister state court was actually exercising jurisdiction "substantially in accordance" with the UCCJA.[11] We hold that, because the South Carolina circuit court could only exercise emergency jurisdiction temporarily and, because Maryland was Brittany's home state, the South Carolina court did not have jurisdiction to issue a permanent custody decree.

The PKPA, like the UCCJA, does not require Maryland to give full faith and credit to the South Carolina decree because that state did not exercise jurisdiction consistently with the provisions of the federal statute. *See* 28 U.S.C. § 1738A(c)(1) (1988) (full faith and credit must be given only to a decree issued by a court that "has jurisdiction under the law of such State").

To summarize, the South Carolina order·granting temporary custody to the Simmonses, based on that state's emergency jurisdiction, will be enforced by the Circuit Court for Prince George's County, until that court has made a permanent custody determination based on Maryland's authority to exercise jurisdiction as Brittany's home state.

---

11. *See, e.g., In re Colburn,* 497 So.2d 182, 183 (Ala.Civ.App.1986) ("If Oklahoma had jurisdiction of the child under the UCCJA or the [PKPA] the judgment must be enforced. If it did not ..., its judgment is not entitled to full faith and credit, and it is not mandatory under the UCCJA that it be enforced"); *Walt v. Walt,* 574 So.2d 205, 216 (Fla. Dist.Ct.App.1991) ("it is appropriate for the Florida court to look behind the Mississippi judgment and determine whether the Mississippi court exercised jurisdiction in strict accordance with the requirements of the UCCJA"); *Thompson, supra,* 381 N.W.2d at 767 ("Nothing in the record suggests that the Washington court did not have jurisdiction under·Washington law to enter its custody orders."); *Mace v. Mace,* 215 Neb. 640, 341 N.W.2d 307, 311 (1983) (UCCJA "does not require *automatic enforcement of a foreign decree ... simply because it is* shown to the court that it exists. Rather, the statute requires that the court in which enforcement is sought examine the jurisdictional foundation upon which the foreign court acted."); *Schrock v. Schrock,* 89 N.C.App. 308, 365 S.E.2d 657, 659 (1988) (finding that Michigan was not exercising jurisdiction substantially in conformity with PKPA and UCCJA); *Hudson v. Hudson,* 35 Wash.App. 822, 670 P.2d 287, 289 (1983) (stating that question presented is whether Washington is mandated by its UCCJA to recognize custody awarded under Indiana's UCCJA).

## II.

Appellees argue that the UCCJA's "first-in-time" rule applies in this situation because, when the custody action was filed in Maryland, there was already a proceeding pending in another state. *See* UNIF.CHILD CUSTODY JURIS.ACT § 6 cmt., 9 U.L.A. at 220 ("When the courts of more than one state have jurisdiction ..., priority in time determines which court will proceed with the action...."); Russell M. Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement*, 66 MINN.L.REV. 711, 772 (1982). The court in which the proceeding is pending, however, must still exercise "jurisdiction substantially in conformity with" the UCCJA. FL § 9–206(a); [12] *see also* Coombs, *supra*, at 725 ("By *properly* entertaining a proceeding and failing to stay it, the court of the other state limits the freedom of the court of the forum state to prefer itself as the appropriate arena." (Emphasis added)). South Carolina, however, did not exercise jurisdiction in conformity with the UCCJA.

Appellees also argue that the trial judge had the discretion to dismiss the action in Maryland under the "inconvenient forum" section of the Maryland UCCJA. A court may "decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." FL § 9–207(a). *See also* S.C.CODE § 20–7–796. In this case, however, the Maryland trial judge specifically found

---

12. Section 9–206(a) of the Family Law Article provides:

*Except where the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or is otherwise neglected or dependent,* a court of this State shall not exercise its jurisdiction under this subtitle if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subtitle, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.
(Emphasis added.)
S.C. CODE § 20–7–794 does not include the emphasized language.

that Maryland was not an inconvenient forum.[13] Because of this finding, FL § 9–207(a) could not be used as the basis for dismissal.

■ Finally, we shall address several issues that the South Carolina court relied on in exercising jurisdiction. The court stated that "the mere presence of the child in this State, gives this Court original jurisdiction concerning questions of custody." The court then cited to S.C.Code § 20–3–160, which gives it the power to make custody orders as part of granting a divorce decree.[14] No divorce decree was involved in this case; therefore, South Carolina Code § 20–3–160 was inapplicable. Moreover, the UCCJA specifically states that, "[e]xcept under subsection (a)(3) and (4) of this section, the child's *physical presence in this State . . . is not alone sufficient* to confer jurisdiction on a court of this State to make a child custody determination." *See* UNIF.CHILD CUSTODY JURIS.ACT § 3(b), 9 U.L.A. at 144 (emphasis added). *See also* FL § 9–204(b); S.C.CODE § 20–7–788(b). South Carolina cannot rely on Brittany's mere presence in the state to give it jurisdiction over this custody dispute because its emergency jurisdiction was temporary and Maryland was Brittany's home state.[15]

---

13. Judge Smith stated:

> I am going to defer to South Carolina who has entered a final decision. I do not find this to be an inconvenient forum. Maryland is clearly not an inconvenient forum under state law or any other law. It cannot be an inconvenient forum, and Maryland's utilization of this jurisdiction would not in my opinion violate any federal law, but I believe a further proceeding in Maryland would violate Maryland's adoption of the Uniform Child Custody [Jurisdiction] Act.

14. Section 20–3–160 of the South Carolina Code reads in full:

> In any action for divorce from the bonds of matrimony the court may at any stage of the cause, or from time to time after final judgment, make such orders touching the care, custody and maintenance of the children of the marriage and what, if any, security shall be given for the same as from the circumstances of the parties and the nature of the case and the best spiritual as well as other interests of the children may be fit, equitable and just.

15. Section § 20–7–788(a)(4) of the South Carolina Code, which is identical to FL § 9–204(a)(4), is inapplicable because Maryland has jurisdiction as Brittany's home state, so it does not "appear that no

Finally, the South Carolina circuit court stated in its June 27, 1994 order that "all objections Mother may have to the prosecution of this action under South Carolina's version of the UCCJA and the PKPA were required to be included in her pending motion. Any objections not presented are now waived." The South Carolina court cited to S.C.Rule of Civil Procedure 12, which states, in pertinent part:

**12(g). Consolidation of Defenses in Motion.** A party who makes a motion under this rule may join with it any other motions herein provided for and *then available to him.* If a party makes a motion under this rule but omits therefrom any defense or objection *then available to him* which this rule permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted....

**12(h). Waiver or Preservation of Certain Defenses.**

(1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, insufficiency of service of process, or that another action is pending between the same parties for the same claim is waived if omitted from a motion [to dismiss].

. . . .

(3) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

(Emphasis supplied.)

 The South Carolina court ruling that appellant had waived her objection to the exercise of jurisdiction under the UCCJA or the federal PKPA was incorrect. The UCCJA and the PKPA spell out when a court has subject-matter jurisdiction. Lack of subject-matter jurisdiction may be raised at any time. *Gardner v. Board of County Comm'rs of St. Mary's*

other state would have jurisdiction." Also, Maryland had not declined to exercise its jurisdiction at the time that the South Carolina court entered its final order as to jurisdiction, or its final order granting custody to appellees.

*County,* 320 Md. 63, 576 A.2d 208 (1990); S.C.RULE CIV.P. 12(h)(3).

Further, even if it were not permissible to raise the issue of lack of subject-matter jurisdiction at any time, appellant did not waive her jurisdictional argument under S.C. Rule of Civil Procedure 12. To waive a defense under that Rule, the defense must be "then available to" the litigant. When appellant filed her motion based on inconvenient forum, South Carolina did have emergency jurisdiction over Brittany's custody. It did not have jurisdiction to make a final determination, but there was no reason for appellant to expect that the South Carolina court would forge ahead to do just that. At the time appellant filed her initial pleading in South Carolina, the defense of lack of subject-matter jurisdiction was not "then available to" her. It did not become available until South Carolina stepped outside the bounds of its jurisdiction.

On remand, the Circuit Court for Prince George's County shall make a determination as to the permanent custody of Brittany.

**JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**