888 So.2d 85 (2004)
D.S., Mother of K.J., A Child, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D03-3491.
District Court of Appeal of Florida, Fifth District.
November 19, 2004.
Mary Pavloff Attridge, of Mary Pavloff Attridge, P.A., Bushnell, for Appellant.
Ralph J. McMurphy, Wildwood, for Appellee.
TORPY, J.
Appellant challenges the lower court's judgment that terminated her parental rights as to her 8 year old son, K.J. Because we determine that the lower court did not have subject matter jurisdiction to terminate Appellant's parental rights, we reverse the judgment and remand this cause for further consideration.
In September and again in October of 2000, police in Connecticut discovered that *86 Appellant had left her two children, then ages 12 and 5, by themselves in a hotel room where the three resided. Appellant was working on the night shift during both incidents. After the second episode, police informed authorities from the Connecticut Department of Children and Families (CDCF). The CDCF removed the children and petitioned the Connecticut Superior Court for protection for the children. Unfortunately, many of the records of the proceedings in the Connecticut court were not presented to the lower court and are not in the record on appeal. What can be gleaned from the scant records and testimony, however, is that the Connecticut court initially adjudicated that K.J. and his older brother had been neglected but were not dependent and that they could remain in the custody of Appellant under the supervision of the CDCF. The CDCF was to formulate a case plan that Appellant was to follow to retain custody of the children. The extent of Appellants compliance with her case plan is unclear.
At some subsequent point, the Connecticut court returned the older boy to Appellants custody under CDCFs supervision but awarded custody of K.J. to his biological father, also a resident of Connecticut. This order of the Connecticut court is not in the record; therefore, it is unclear whether the custody order that related to K.J. was permanent, whether continued supervision was ordered, and under what circumstances Appellant was permitted visitation.
After K.J. had lived with his father for approximately seven or eight months, he was sexually abused by his half-brother. As a result, without consulting Appellant, the CDCF, or the court, K.J.s father, in his words, gave K.J. to the fathers sister (K.J.s aunt). K.J.s aunt went to Connecticut, removed K.J. and brought him to live with her and her husband in Florida. Several weeks after K.J. arrived in Florida, his aunt reported the prior incident of sexual abuse to the Florida Department of Children and Families (DCF) who filed a shelter petition and obtained an order that K.J. remain in his aunts custody. DCF then initiated proceedings to terminate the parental rights of both parents.
During the termination proceedings, K.J.s father surrendered his parental rights under the professed belief that his sister would have all parental rights to the child. Trial was held on the DCFs petition to terminate Appellants rights. During the trial, except for expert testimony about K.J.s current psychological condition, the evidence was comprised of Appellants purported neglect of K.J. prior to the date on which custody was transferred to K.J.s father. After trial, the lower court entered judgment terminating Appellants parental rights and this appeal timely followed.
Appellant raises several grounds on appeal, including jurisdiction, the failure of DCF to attempt to reunify, and the sufficiency of the evidence to support the trial courts order of termination, all of which might have merit. Because the jurisdiction issue is dispositive, however, we need not address Appellants other arguments. On this issue, Appellant contends that, at best, the lower court had subject matter jurisdiction[1] to enter the emergency shelter order but that it could not proceed to enter a permanent order unless the Connecticut *87 court first relinquished its jurisdiction. We agree.
Subject matter jurisdiction of these proceedings, which were filed before October 1, 2002, is governed by the Uniform Child Custody Jurisdiction Act (UCCJA), sections 61.1302-61.1348, Florida Statutes (2001). Morales v. Salazar, 833 So.2d 226 (Fla. 5th DCA 2002). Under the UCCJA, Connecticut was clearly the home state at the time the lower courts jurisdiction was initially invoked. DCF concedes this point but argues that Florida became the home state before the termination proceedings were commenced because K.J., by the time the termination petition was filed, had been living in Florida (albeit pursuant to the lower courts shelter order) for more than six months. 61.1308(1)(a), 61.1306(5), Fla. Stat. (2001). We reject this argument. Although the Florida court had jurisdiction to enter the shelter order under the emergency jurisdiction component of the UCCJA, emergency jurisdiction does not confer upon the court the power to make permanent custody determinations. Rothman v. Rothman, 599 So.2d 260 (Fla. 4th DCA 1992); Bodenheimer, Interstate Custody and Continuing Jurisdiction under the UCCJA, 14 Fam. L.Q. 203, 225-26 (1981) (emergency jurisdiction confers authority to make temporary orders but does not encompass permanent custody determinations). Accord, Harris v. Simmons, 110 Md.App. 95, 676 A.2d 944 (1996) and cases cited therein at 949, n. 5. Thus, the jurisdiction of the Connecticut court continues until it is relinquished by the Connecticut court. 61.1314, Fla. Stat. (2001); Yurgel v. Yurgel, 572 So.2d 1327 (Fla.1990).
Here, although the lower court found that the Connecticut court had refused to accept jurisdiction, this finding was based solely on the vague testimony of Appellant that she tried to have the Connecticut case reopened. However, nothing in the record shows that the lower court, although aware of the Connecticut proceedings, followed the procedure set forth in section 61.1314, Florida Statutes (2001), which required, among other things, that the Florida court communicate with the Connecticut court. This is especially troublesome here where the same alleged incidents of neglect by Appellant provided the factual basis for the proceedings in both states.
We therefore hold that DCF failed to meet its burden to establish the courts jurisdiction, except as it related to the shelter order. Upon remand, the court shall follow the statutory procedure contained in section 61.1314 to determine whether it has jurisdiction to proceed beyond the temporary order. The lower court should also be mindful of section 61.1316, Florida Statutes, which might be applicable in a case such as this where Connecticut clearly is in the best position to adjudicate this controversy. In the event that the Connecticut court does relinquish jurisdiction to Florida, a new trial must be held on the petition because the prior judgment is void.
REVERSED AND REMANDED.
PALMER and ORFINGER, JJ., concur.
NOTES
[1] Appellant made no challenge to the courts jurisdiction over her person and waived any such challenge by her appearance below. Whether minimum contacts by a parent must be established in a termination of parental rights case is the subject of much debate among appellate courts throughout the country. See, e.g. Division of Youth and Family Services v. M.Y.J.P. and J.R.A., 360 N.J.Super. 426, 823 A.2d 817 (2003) and cases cited therein.